CITY OF DAYTON *v.* STEARNS.

(No. 328199—Decided February 18, 1971.)

Dayton Municipal Court, Criminal Division.

*Mr. Jack Schwartz,* for plaintiff.
*Mr. Dan D. Weiner,* for defendant.

A. *BACKGROUND*

RICE, J.  This cause came on to be heard upon the defendant's supplemental motion for a new trial.  The defendant was found guilty, by the court, of a violation of the city of Dayton ordinance relating to the second-hand automobile dealers licensing law (Section 655).  A motion for new trial, submitted without case law or statutory authorities, was timely filed by the defendant and was overruled by the court.  The defendant then filed this supplemental motion for a new trial, together with a memorandum, setting forth, for the first time, the authorities relied upon.

The question of the constitutionality of the ordinance, going as it does to the matter of the court's jurisdiction, may be raised at any time.

B. *THE FACTS*

The facts of the case at bar are not in dispute and may be conveniently stated as follows:

The defendant, having once previously been convicted

of a violation of the city ordinance requiring the licensing of second-hand automobile dealers, advertised three automobiles, titled in his name, for sale in the Dayton newspapers in June of 1969. One Robert Hochman, inquiring about a 1947 Willys Jeep with snow plow, with a "For Sale" sign attached, sitting in the defendant's yard, inquired of the defendant and was told by him that the vehicle was for sale. Negotiations as to price and the manner and means of payment were discussed, although Hochman did not, in the end, purchase the jeep. During their conversation, the defendant indicated that several other vehicles on the premises were for sale, although no price was discussed. Walter Seikel, the executive director of the Miami Valley Automobile Dealers Association, stated that on several occasions, prior to the defendant's June 15, 1969, arrest, he (Seikel) observed the same "For Sale" sign on different cars parked on the defendant's front lawn.

The defendant, for his testimony, indicated that these three automobiles advertised in the papers, and others viewed on the premises by Seikel, were originally bought by him for his own personal and business use and that it was only in June of 1969, when faced with mounting personal bills and obligations that he decided to liquidate his interests in them to raise money. There was testimony that at least one of the cars advertised was sold for a $75.00 profit.

The 1947 Willys Jeep with attached snow plow that was offered to Hochman on June 15, was obtained by the defendant and title taken in his name on June 13, 1969. This vehicle was advertised for sale in the newspapers for a period of nine (9) days beginning on June 12, 1969 (one day before he took title). Close scrutiny of these dates (a car advertised in the papers as "For Sale" one day prior to his taking title and a verbal offer to sell to a perfect stranger some two days after taking title) belies the defendant's contention that these vehicles were purchased for his personal use (a snow plow in June! ! !) and that he decided to sell only after he became financially hard pressed.

In the face of such evidence, the defendant contends that these sales or displays for sale were casual in nature, not in the defendant's regular course of business, and that, therefore, he is not criminally liable under Section 655 of the Ordinances of the city of Dayton regulating the sale of second-hand automobiles without a license. The state statute regulating the licensing of automobile dealers and salesmen for the sale of automobiles, R. C. 4517.01 *et seq,* (analogous to Section 655-62 of the Dayton Ordinances) in defining the term "engaging in business" clearly states that "making a casual sale is not engaging in business" (R. C. 4517.01), and thus exempts the casual sale from the licensing requirements of R. C. 4517.18. The defendant thus contends that the city ordinance which, while placing an absolute prohibition on sales or displaying for sale of automobiles without a license, does not contain a casual sales exemption, is unconstitutional as being in conflict with the state law on the subject and thus violative of Article XVIII, Section 3 of the Ohio Constitution. That constitutional section along with Section 7 allows municipalities (whether governed by a charter such as Dayton's or not) to have the authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary, and other similar regulations as are not in conflict with the general laws (laws having state wide application).

R. C. 4517.01 to 4517.99 relate to the *licensing* of automobile dealers and salesmen, the applications for licensing and the fees charged for said licenses. R. C. 4517.01 provides definitions applicable to all the above sections; R. C. 4517.18 provides that no person shall engage in the business of selling, displaying, offering for sale, or dealing in motor vehicles at retail without having a *license* therefor as required by R. C. 4517.01 *et seq.* R. C. 4517.01 (F) in defining the terms "engaging in business," states, in pertinent part, that same means "commencing, conducting or continuing in business * * * making a casual sale is not engaging in business." R. C. 4517.01 (J) in defining a dealer within the terms of the law requiring him to be

licensed, indicates that one of the criteria is that such person maintain a place of business which is maintained for the exclusive business of selling, displaying for sale, or dealing in motor vehicles.

Section 655 of the General Ordinances of the city of Dayton requires that any person, firm or corporation engaging in the business of buying, selling or displaying for sale in the city of Dayton, either as principal or agent for another, second-hand automobiles, must first secure and have in effect a *license* obtained from the city of Dayton. Section 656 to 659 of said ordinances regulate the term of said license, the fee for same and the duty, time for filing and content of certain reports required to be filed with the Chief of Police of Dayton with regard to traffic in second-hand automobiles. Section 662 sets forth the penalties for violations of these sections, declaring such violation to be a misdemeanor and fixing the penalty for each violation beyond the first such infraction.

C. *THE ISSUE*

The legal issue presented herein is whether Sections 655 to 662 of the General Ordinances of the city of Dayton regulating the licensing of second-hand automobile dealers or salesmen are constitutional as a duly authorized exercise of the power of local self-government (or a police regulation not in conflict with the general law) *or* unconstitutional as being police regulations in conflict with a general or state law on the subject (R. C. 4517.01 *et seq.*) and thus violative of Article XVIII, Section 3 of the Ohio Constitution. The aforementioned constitutional section provides that municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their jurisdictions such local police, sanitary and other similar regulations as are not in conflict with the general laws.

D. *THE DECISION AND THE REASONING*

It is clear, whether the automobile sales or displaying for sale, in the instant case, be considered casual or regular or whether the defendant maintains his premises exclusively for the sale or displaying for sale of automobiles

or not, that the city ordinances in question are unconstitutional and violative of Article XVIII, Section 3 of the Ohio Constitution in that they are police regulations passed by a municipality in conflict with a state law on the very same subject.

1. Article XVIII, Section 3 of the Ohio Constitution provides that "'municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with the general laws.''

2. "General laws" have been defined as "laws passed by the Legislature which are of general application throughout the state." *Leis* v. *Cleveland Rd. Co.*, 101 Ohio St. 162; laws such as relate to police, sanitary and other similar regulations which apply uniformly throughout the state and which involve the concern of the state for the peace, health and safety of all its people, without reference to the political subdivisions of the state, *Fitzgerald* v. *Cleveland*, 88 Ohio St. 338. It is thus clear that R. C. 4517.01 *et seq.* are "general laws" intended to have general application throughout the state of Ohio.

3. The state statutes (R. C. 4517.01 *et seq.*) and the city ordinances (Section 655 *et seq.*) deal with the same subject matter involved in the instant case, to wit: The necessity for a dealer or salesman in second-hand automobiles to procure a license from the state or city before selling, displaying or offering for sale of said second-hand vehicles.

Section 655 deals specifically with second-hand automobiles. R. C. 4517.01 *et seq.* deal with the selling, etc. of automobiles generally. Yet, in R. C. 4517.01 (the definition section) "motor vehicle" is defined in the manner that said term is defined under Section 4501.01. That section (4501.01) defines "motor vehicle" as "*any* vehicle" (emphasis added), thus including used or second-hand vehicles as well as new automobiles. It is thus clear that R. C. 4517.01 *et seq.* also encompasses, as do the city ordinances, the field of second-hand automobiles.

4. Section 655-62 *et seq.* of the General Ordinances of the city of Dayton are *police regulations* (as opposed to an exercise of the power of local self-government) within the meaning of Article XVIII, Section 3 of the Ohio Constitution. Any municipal ordinance which prohibits the doing of something without a municipal license to do it is such a police regulation. *C. L. Maier Co.* v. *City of Canton,* 94 Ohio Law Abs. 434 (hotel or motel license required before business could be operated, said license to be secured from the city): See also *Auxter* v. *Toledo,* 20 O. O. 2d 71 (the city of Toledo requirement of a city license to conduct the business of selling beer and liquor).

The power of local self-government granted to municipalities by Article XVIII, Section 3 of the Ohio Constitution relates solely to the government and administration of the internal affairs of the municipality and, in the absence of a statute conferring a broader power, municipal legislation must be confined to that area. *Beach Wood* v. *Board of Elections,* 167 Ohio St., 369.

5. The city of Dayton Ordinances (Section 655 *et seq.*) being a police regulation, *conflict* with the general law on the subject and are thus *unconstitutional.*

The test as to whether an ordinance is constitutional or not does not revolve solely upon the question of whether or not the statutes or ordinances in point deal with the same subject. The crucial question is whether the city ordinance *conflicts* with the state statute. The validity or invalidity or a local police regulation depends upon the existence or nonexistence of a *conflict* with the general laws of the state and not upon any question of a state prohibition or pre-emption of such power. *City of Columbus* v. *Glasscock* (1962), 117 Ohio App. 63, and other cases cited therein. In the case at bar, the city of Dayton Ordinances requiring the licensing of second-hand automobile dealers conflict with the general law on the subject.

The leading case in Ohio on the test for "conflict" in the field of municipal police regulations and on the subject of what constitutes a "conflict" within the meaning of Article XVIII, Section 3 of the Ohio Constitution is *Vil-*

*lage of Struthers* v. *Sokol* (1923), 108 Ohio St. 263, which states, in paragraph two of the Syllabus:

"In determining whether an ordinance is in 'conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa."

The *Village of Struthers* court held in paragraph three of the syllabus that "a police regulation ordinance is not in conflict with the general law upon the same subject merely because certain specific acts are declared unlawful by the ordinance, which acts are not referred to in the general law or because certain specific acts are omitted in the ordinance but referred to in the general law (casual sales exemption, regularly established place of business exclusively devoted to selling, offering, etc. for sale) or because different penalties are provided for the same act even though greater penalties are provided by the municipal ordinance." In the case at bar, the ordinance provides a possible imprisonment for a second offense; the state law carries no such penalties. The only test for conflict is whether the ordinance permits or licenses that which the statute forbids and prohibits and vice versa.

Recent Ohio cases, dealing with the subject of municipal ordinances requiring municipal licenses obtainable upon payment of a fee to operate in a field in which the state law requires a state license to so operate, in construing the *Village of Struthers case,* have overruled, limited, distinguished and, for all intents and purposes, reversed a long line of cases ending with the case of *Stary* v. *City of Brooklyn* (1954), 162 Ohio St. 120, which held, pursuant to the *Village of Struthers* decision, that a municipality has the power under Article XVIII, Section 3 of the Ohio Constitution to enact legislation designed to regulate trailer camps or trailer parks and with a provision in a municipal ordinance requiring the operator of such a facility to pay to the municipality a license fee which is reasonably related to the expense of the camp or park. The enforcement of the ordinance, said the *Stary* court, is not in conflict with a state law (general law) authorizing

the board of health of the district in which the camp or park is located to charge an annual fee for the right to operate.

The *Stary* decision and the long line of cases preceding it, would, had they not been limited, distinguished and overruled, appear to legitimatize the city of Dayton's Ordinances in question herein which impose a license requirement and fee in addition to that required by the state for one engaged in the business of selling second-hand automobiles. This line of cases, in upholding municipal police regulations, did so on two grounds:

1. Paragraph three of the syllabus of the *Village of Struthers case* which held that a municipal ordinance was not in conflict with the state law on the same subject simply because it declared certain specific acts unlawful which were not referred to in the state law or because the ordinance omitted certain specific acts referred to in the state law or because different penalties were provided for the violation.

2. The case of *Froelich* v. *City of Cleveland* (1919), 99 Ohio St. 376, in upholding a municipal ordinance fixing a ten-ton limit on vehicles operating on city streets despite the existence of a state law fixing a higher (12-ton) load limit, stated—''in the determination of the reasonableness of ordinances, a court will not substitute its judgment for the discretion of the municipal legislative authorities who are presumed to be familiar with the local needs and conditions, so long as the provisions of such ordinances do not clearly transcend the limit of reasonableness.'' Thus, except in cases of obvious, clear conflict, there existed a tendency on the part of the courts to find the local laws to be an exercise of local governmental authority as opposed to police regulations and, if found to be police regulations, that same were not in conflict with general laws.

All this changed with the Supreme Court's decision in *Auxter* v. *City of Toledo* (1962), 173 Ohio St. 444, which, while following the *Village of Struthers case, supra,* and limiting and distinguishing the *Stary* v. *Brooklyn* line of cases, held that a city of Toledo municipal ordinance pro-

hibiting the sale of beer and other intoxicating liquors in Toledo without a license to do so, obtainable upon payment of a license fee, is a police regulation within the meaning of Article XVIII, Section 3 of the Ohio Constitution and is, by virtue of that constitutional provision, invalid as being in conflict with a state law on the subject, the Ohio Liquor Control Act, regulating the issuance of liquor permits to carry on the business of selling beer and other intoxicating liquors. The *Auxter* court "rediscovered," as it were, paragraph two of the syllabus of the *Village of Struthers* v. *Sokol case, supra,* based its decision on that syllabus and specifically limited to its facts and distinguished the case of *Stary* v. *City of Brooklyn, supra.*

The *Auxter* court in determining that a "conflict" existed such as to rule the Toledo Liquor Ordinance unconstitutional, relied on paragraph two of the syllabus of the *Village of Struthers case,* which states:

"In determining whether an ordinance is 'in conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits and vice versa."

The court in the *Auxter case* held that the Toledo Liquor Ordinance permitted or licensed activity which the state statute forbade and prohibited, and *vice versa.* In other words, even though the licensee had a state license authorizing him to carry on the business of selling beer in Toledo, the city ordinance forbade him from doing so if he did not secure and pay for a municipal license to so operate. The licensee was prohibited by municipal ordinance to do something that he had been licensed by the state to do, unless he paid for and secured a municipal ordinance to do it.

The *Stary* v. *City of Brooklyn case, supra,* inconsistent as it was with this holding, was "distinguished away" on the grounds that the right to require a Municipal license was not directly involved as the portion of the ordinance principally attacked in that case prohibited certain acts and conduct and, since a penalty was provided for violation of that section, it could have been enforced even

if the separable licensing provision therein had been declared invalid. Whether this be a legitimate or a spurious distinction, the practical effect is to overrule the *Stary* line of cases and to, for all time, subordinate, in so far as the field of Municipal licensing in areas over which the state law requires a state license to operate is concerned, paragraph three of the syllabus of the *Village of Struthers case*, which was the basis for the *Stary* line of decisions upholding municipal police regulations as not in conflict with state law; subordinate that syllabus to the second paragraph of the syllabus of that case which provides that a conflict exists when the ordinance permits or licenses that which the statute forbids and prohibits, and *vice versa*.

Other authorities, both preceding and following the Supreme Court's decision in the *Auxter case*, substantiate, support and follow that decision, to wit:

1. *Niehaus* v. *State, ex rel. Board of Education of Dayton* (1924), 111 Ohio St. 47. The General Assembly of Ohio having enacted a general law requiring the building inspection departments of municipalities having a regularly organized building inspection department to approve plans for the construction of public school buildings erected within such municipalities, a municipality is without power to thwart the operation of such general law by the enactment of an ordinance requiring payment of a fee and the obtaining of a license as a condition precedent to compliance therewith.

2. The *State, ex rel. McElroy, Attorney General,* v. *Akron* (1962), 173 Ohio St. 189. The enactment of R. C. 1547.61 constitutes a valid exercise of police power by the state, and by the enactment of such section, the state has pre-empted the authority to license watercraft whether operated on public or private waters. The city of Akron ordinance requiring, for a fee, city boat licenses for the operation of watercraft on waters owned by the city was held invalid as a police regulation in conflict with a state law on the subject. This case, although following the *Auxter* line of decisions places greater weight on the theory of pre-emption.

3. *C. L. Maier Co.* v. *City of Canton* (1964), 94 Ohio Law Abs. 434. The city of Canton Municipal Ordinances which require the owner and operator of a hotel or motel to obtain a license from the city to conduct such business is in conflict with the state and the general laws providing for the procurement of an annual license from the state to operate such a hotel or motel.

4. *Anderson* v. *Brown* (1968), 13 Ohio St. 2d 53. A license for the operation of a house trailer park issued by the district board of health pursuant to general or state law, gives the person to whom it is issued the right to operate such park, and a municipal ordinance which prohibits the operation of such parks within the limit of a municipality without a municipal license, which is obtainable only upon paying a fee, is in conflict with the aforesaid state or general law and is thus unconstitutional.

In the case at bar, it is clear, pursuant to the second paragraph of the syllabus of *Village of Struthers* v. *Sokol, supra, Auxter* v. *Toledo, supra,* and the other above mentioned authorities which, preceding or following *Auxter,* lay down the present definition or rule of thumb to determine whether a municipal ordinance requiring a license to engage in a certain activity conflicts with a general or state law which also requires a license to engage in that activity, that the city of Dayton Ordinances regulating the licensing of second-hand automobile dealers are unconstitutional as being in conflict with the general or state law requiring a state license to engage in that business.

One wishing to function as a second-hand automobile dealer in Dayton finds himself in the position that, although he is required to have a state license to engage in the business the municipal ordinance in question prohibits him from so operating in the business if he does not pay for and secure a municipal license. As such, the prospective businessman would be prohibited from doing something in Dayton that he had been licensed by the state to do, unless and until he paid for and secured a municipal license to do it. The state says that such a second-hand automobile sales business may be conducted if a license is obtained

from it, but the city says that the same business cannot be conducted unless the businessman gets a license from it, and *vice versa*. If the state grants the license, the city still prohibits engaging in the business until a license to operate is obtained from the municipality. And, if either the state or the city refuses a license or revokes the license because the requirements of the general law or ordinances are not met, and the other governmental agency grants the license, there is a conflict, and the business still cannot operate. The facts of the instant case thus represent a classic case of conflict within the rationale of *Village of Struthers* and *Auxter* v. *Toledo*.

The fact that George Stearns, in the instant case, did not secure a license from the state or may not have had to secure one if his were considered casual sales from premises not used exclusively for selling or displaying automobiles, is of no import. Even were one to argue for the constitutionality of the Dayton ordinances on the grounds that said ordinances, unlike the state or general law, did not exempt casual sales from premises not used exclusively for the selling or displaying for sale of second-hand automobiles, and that, therefore, the municipality could legislate in that narrow area not covered or pre-empted by the general law, the court would still be confronted with a situation falling within the rationale of paragraph two of the syllabus of the *Village of Struthers, case*, to wit: the city of Dayton Ordinances would forbid and prohibit conduct such as casual sales from premises not used exclusively for the sale or displaying for sale of second-hand automobiles, which the state statute or general law on the subject licenses or permits. The general law would declare something to be right which the ordinance declares to be wrong. See *City of Akron* v. *Scalera*, 135 Ohio St. 65, to the effect that if a municipal ordinance of the type herein involved is in collision with the general law on the same subject, the ordinance is invalid. In this case, dealing with the subject of a municipality's requiring a *license*, obtainable upon the payment of a fee, to operate in an area in which the state law on the

subject also requires one wishing to engage in the business to secure a state license, for a fee, the court chooses to follow paragraph two of the syllabus of the *Village of Struthers case* (as opposed to paragraph three of the syllabus) as said syllabus is construed and followed in the *Auxter* line of cases. The fact is that the city of Dayton Ordinances herein conflict with the state or general law and are thus invalid. A prosecution cannot proceed upon an invalid ordinance.

It will be noted that the court is declaring as unconstitutional, Sections 655 through 662. These sections relate to the licensing of second-hand automobile dealers by the city of Dayton. It is the court's opinion that Sections 658 and 659 are, in and of themselves, constitutional as a valid exercise of the police power, not in conflict with the state law. Section 658 relates to certain records that must be filed, with the chief of police, by any person engaged in the business of buying or selling second-hand automobiles; Section 659 covers the time for filing of the aforesaid reports by the "dealer." The court feels that these sections are so inextricably woven into the whole fabric of the second-hand automobile dealers licensing law, which the court is declaring unconstitutional, that they cannot be allowed to stand. These sections (Section 658 and 659) state, by implication, that their provisions apply to dealers obtaining a license from the city of Dayton; their requirement as to the filing of the reports involves reference to "dealers," having in mind, presumably, all those people required to obtain a dealers license under the now declared to be unconstitutional city of Dayton Licensing Ordinance. It is the city's licensing which we are declaring to be invalid. We have seen that the definition of "dealers" under the city's licensing law is more all-inclusive than that contained in the state law which exempts from the definition of "dealer" those individuals making casual sales from premises not used exclusively for the sale or displaying for sale of automobiles. Since the only licensing that can be required is that under the state law (R. C. 4517.01 *et seq.*), it is the court's feeling that these sections

128

(Section 658 and 659) must be re-enacted with reference to the state licensing law and to the definition of "dealers" under that state licensing law, as opposed to the now declared to be invalid city licensing ordinances with their all-inclusive concept or definition of dealers.

Wherefore, the city of Dayton Ordinances are declared to be unconstitutional and invalid as being police regulations in conflict with the general law (R. C. 4517.01 *et seq.*), as prohibited by Article XVIII, Section 3 of the Ohio Constitution. The affidavit, filed for a violation of an invalid ordinance, is dismissed.