Robinson, J.
 

 ¡Section 1031, General Code (99 O. L., 232), provides:
 

 “The chief inspector of workshops and factories shall cause to be inspected all schoolhouses * * * and other buildings used for the assemblage * * * of people. # # * Such inspection shall be made with special reference to precautions for the prevention of fires, the provision of fire escapes, exits, emergency exits, hallways, air space, and such other matters which relate to the health and safety of those occupying, or assembled in, such structures.”
 

 Section 1035, General Code (99 O. L., 233), provides:
 

 “The plans for the erection of such structure * * * shall be approved by the inspector of workshops and factories, except in municipalities having regularly organized building inspection departments, in which case the plans shall be approved by such department.”
 

 The school building proposed to be erected in
 
 *52
 
 this case was to he located within the corporate limits of the city of Dayton, for a district composed of territory both within and without the city. The legislation of both the city of Dayton and the state is directed toward preserving the health and securing the safety of the public, and is an exercise of the police power of the respective legislative bodies.
 

 The police power of a municipality is granted to it by the Constitution of the state, but in the grant it is limited to such local power as is “not in conflict with general laws.”
 

 The state in the exercise of its police power enacted Section 1035, General Code, and thereby made it the duty of the building inspection department of cities having such department regularly organized to pass upon the plans of buildings such as the schoolhouse here in question.
 

 The plaintiff in error recognizing his duty in that respect passed favorably upon the plans of the defendant in error. However, after having approved such plans, he refused a permit for construction in pursuance thereof, for the reason that the city of Dayton had enacted an ordinance requiring as a condition precedent to the issuing of such permit the payment of a fee.
 

 The status of a municipality in its relation to the sovereign state is not different, by reason or because of the adoption of Section 3, Art. XVTH, granting to municipalities authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations as are not in conflict with general laws, than it was prior to the
 
 *53
 
 adoption of that provision, or would he in case of its repeal.
 

 That section of the Constitution grants to municipalities all powers of local self-government and such local police power as is not in conflict with general laws; in other words, where, prior to the adoption of the amendment, such powers were granted by the sovereign state, through its legislative body, subject to withdrawal by the state through its legislative body, the power now is granted by the sovereign people of the state subject to withdrawal by the sovereign people; but the sovereignty of the state over the municipality is not divested by that provision, nor does the power of the sovereign to administer public affairs end at the corporation line. The only feature of the sovereign power which is surrendered by the so-called “home rule” provision of the Constitution is that which relates solely to local government. Neither the municipality nor its officers are relieved of any obligation which other political subdivisions and other officers owe to the state, except in the matter of local self-government, and such municipalities and their officers are still agencies of the state, acting in behalf of that portion of the state in which they have jurisdiction. "While within its own boundaries, within the limits of the grant, it executes the functions and possesses the attributes of sovereignty, and to that extent as against its citizens and all persons within its jurisdiction has the rights and immunities of the sovereign, yet as against the sovereign it is but an agent whose powers may be withdrawn at the will of the sovereign that granted them. Hence, the power to exercise sover
 
 *54
 
 eignty in local self-government, and local police power not in conflict with general law, does not confer upon municipalities the power to enact and enforce legislation which will obstruct or hamper the sovereign in the exercise of a sovereignty not granted away.
 

 The matter of providing the means of education is by the Constitution expressly imposed upon the General Assembly of the state.
 

 By Section 7, Art. I, of the Constitution, it is provided:
 

 “It shall be the duty of the General Assembly to pass suitable laws * * # to encourage schools and the means of instruction.”
 

 Section 2, Art. VI, provides:
 

 “The General Assembly shall mate such provisions, by taxation, or otherwise, as, with the income arising from the school trust fund, will secure a thorough and efficient system of common schools throughout the state.”
 

 Section 3, Art. VI, provides:
 

 “Provision shall be made by law for the organization, administration and control of the public school system of the state supported' by public funds. ’ ’
 

 The only constitutional concession of power to municipalities with reference to public schools is a provision that municipalities that have attained to the classification of a city shall have power to determine by a referendum vote the number of members of the school board of the district situated wholly or partly within such city.
 

 The power, then, of the municipality to approve the plans for the erection of a public school build
 
 *55
 
 ing, is the power granted by the Legislature in Section 1035, General Code.
 

 The Legislature is authorized to invest the inspector of workshops and factories, or any other state official within municipalities, as well as without, with power to approve plans and specifications for any public school building. It has the power to require the payment of a fee to such official for the performance of such duty, and it has the power to vest such power in any official of a municipality within the jurisdiction of such municipality, and to provide for the payment of a fee to such official; but it had not so provided. The limit of the power of the municipality in that respect is the power granted by the Legislature.
 

 It would hardly be contended that a municipality would have the power to enact and enforce an ordinance which would require the payment of a fee as a condition precedent to performance of its duty under Section 1033 of the General Code, which provides that, if the provisions of Section 1031, General Code, are not complied with by the owner of a building, it shall be the duty of the mayor with the aid of the police to prevent the use of the structure for public assemblage.
 

 The fact that the Legislature has provided for the payment of a fee by political subdivisions, as well as a payment of a fee by individuals for the performance of certain official acts, such as the transfer of real estate and the recording of deeds, is not helpful in the determination of the question in this case, for the reason that the Legislature has not provided for the payment of a fee to muniei
 
 *56
 
 palities or their officials for the service exacted by Section 1035.
 

 There having been no general surrender of sovereignty over municipalities operating under a charter of their own adoption, the sovereignty of the state extends throughout the municipalities in all matters not clearly surrendered, and that sovereignty may not be defeated by the enactment of an ordinance inconsistent with general laws.
 

 Judgment affirmed.
 

 Marshall, C. J., Jones, Matthlas, Day and Allen, JJ., concur.
 

 Wanamaker, J., not participating.