BROWNFIELD ET AL., APPELLANTS, *v.*
THE STATE OF OHIO ET AL., APPELLEES.

[Cite as Brownfield v. State (1980), 63 Ohio St. 2d 282.]

(No. 79-860—Decided July 30, 1980.)

*Neman & Graves Co., L.P.A., Mr. Patrick J. Neman, Mr. James R. Graves* and *Ms. Patricia M. Ritzert,* for appellants Brownfield *et al.*

*Mr. Robert D. Pritt,* director of law, and *Mr. Wayne H. Calabrese,* for appellant city of Akron.

*Green, Schiavoni, Murphy, Haines & Sqambati Co., L.P.A., Mr. Eugene Green* and *Mr. Barry R. Laine,* for appellees state of Ohio and Western Reserve Human Services.

*Mr. John Guendelsberger,* for intervening appellees Detwiler and Atterholt.

*Per Curiam.* As a preliminary matter we must determine the validity of the jurisdictional challenge raised by appellee state of Ohio. The state contends that it cannot be subjected to suit in its own courts absent its consent, and that it has not waived its immunity in this instance.

Section 16, Article I of the Ohio Constitution provides, in part, that: "Suits may be brought against the state, in such courts and in such manner, as may be provided by law."

This court has repeatedly held that this section of the Constitution, while conferring authority upon the General Assembly to provide for actions against the state, is not self-executing. *Palumbo* v. *Indus. Comm.* (1942), 140 Ohio St. 54, paragraph two of the syllabus; *State, ex rel. Williams,* v. *Glander* (1947), 148 Ohio St. 188, paragraph one of the syllabus, certiorari denied 332 U.S. 817; *Wilson* v. *Cincinnati* (1961), 172 Ohio St. 303, 304-305; *Krause* v. *State* (1972), 31 Ohio St. 2d 132, paragraph three of the syllabus, appeal dismissed 409 U.S. 1052. Appellants have not referred this court to any statute, nor has independent research disclosed

one, authorizing the maintenance of an injunctive action directly against the state of Ohio in a Court of Common Pleas. We do not believe that the state has consented to such a suit in that forum.[2] For this reason, we hereby dismiss the state of Ohio as a party to this cause.[3]

This does not dispose of the entire cause, however. In addition to seeking declaratory and injunctive relief against the state, appellants also pray for similar relief against Western Reserve Human Services. While we are constitutionally disabled from entertaining this appeal in relation to the state of Ohio, we are under no such disability regarding an Ohio nonprofit corporation which is under contract to provide services to the state.

The central issue raised by this appeal is whether a privately-operated, state-owned facility is automatically exempt from municipal zoning restrictions. Appellees assert that the power to zone is necessarily subordinate to the power to condemn property, and that because the state has the power to take the subject property by eminent domain, the proposed halfway house is absolutely immune from local zoning laws. Although this approach has some precedential support, logic and public policy considerations dictate that we reject it.

The principal case adopting the theory espoused by appellees is *State, ex rel. Ohio Turnpike Comm.,* v. *Allen* (1952), 158 Ohio St. 168, certiorari denied 344 U.S. 865. One of the arguments propounded by the respondent in *Allen* was that the proposed Ohio Turnpike was to pass through territory that had been zoned, and that the turnpike would constitute a use in violation of the local zoning ordinances. This court, relying upon *Doan* v. *Cleveland Short Line Ry. Co.* (1915), 92 Ohio St. 461, rejected that argument, and held that zoning restrictions do not apply to state agencies vested with the power of eminent domain.

[2] We do not pass on the question of whether this action could have been brought against the state in the Court of Claims pursuant to R. C. Chapter 2743.

[3] Appellants' contention that the jurisdictional issue was previously determined in their favor is without merit. While this court dismissed the state's complaint in prohibition in *State, ex rel. State of Ohio,* v. *Kennedy* (No. 78-180, April 14, 1978), the basis for that dismissal is not apparent from the judgment entry. Because there are several possible reasons for such a dismissal, our judgment in that case does not have a *res judicata* effect on the issue of jurisdiction.

The *Allen* court's reliance upon *Doan* was misplaced, however. *Doan* merely held that restrictive covenants imposed by a subdivision developer cannot be enforced against agencies possessing the power to condemn. This court's decision in *Doan* was based upon the reasoning that:

"The right of eminent domain rests upon public necessity, and a contract or covenant or plan of allotment which attempts to prevent the exercise of that right is clearly against public policy and is therefore illegal and void." *Doan, supra,* at 468-469.

While this rationale is reasonably applicable to conflicts between private individuals and entities possessing eminent domain powers, it should not be extended to intergovernmental conflicts. Both the municipality's exercise of its zoning powers and the state's exercise of the power of eminent domain are intended to effectuate public purposes. While we agree with the judgment in *Allen,* we must reject its reasoning and the extension of the rule set forth in *Doan.* We believe that the correct approach in these cases where conflicting interests of governmental entities appear would be in each instance to weigh the general public purposes to be served by the exercise of each power, and to resolve the impasse in favor of that power which will serve the needs of the greater number of our citizens.

Appellees' premise that the power of condemnation is superior to the zoning power is, in turn, grounded in the notion that zoning ordinances may completely frustrate attempts to exercise the power of eminent domain. While this is a legitimate concern, it does not justify the invocation of absolute immunity in all cases. Unless a municipality completely prohibits a certain use within its corporate limits, the state may acquire property for that use and still comply with local zoning restrictions. In the case *sub judice,* the city of Akron zoning ordinance permits, as a conditional use, a "[l]odging-house or hostel conducted for rehabilitation." It was possible, therefore, for the state of Ohio to both purchase property for use as a halfway house and comply with the land use scheme of the city of Akron.

In sum, we believe that the commonly expressed rationale for the rule of absolute governmental immunity from zoning is unsound, and we hereby reject it.

Appellants urge this court to adopt the governmental-proprietary use distinction which prevails in many jurisdictions. See, *e.g., Water Works Bd. of Birmingham* v. *Stephens* (1955), 262 Ala. 203, 78 So. 2d 267; *Scottsdale* v. *Municipal Court* (1962), 90 Ariz. 393, 368 P. 2d 637; *Nehrbas* v. *Lloyd Harbor* (1957), 2 N.Y. 2d 190, 159 N.Y. Supp. 2d 145. Under this test, uses of a governmental (essential) nature are immune from zoning ordinances, while uses of a proprietary (permissive) nature are not. This distinction has received extensive criticism from legal commentators, Seasongood, Municipal Corporations: Objections to the Governmental or Proprietary Test, 22 Va. L. Rev. 910 (1936); Recent Decisions, 15 N.Y.U. L. Rev. 449 (1937); Comments, 39 Tex. L. Rev. 316 (1961); Notes, 84 Harv. L. Rev. 869 (1971), and from some courts. See, *e.g., Twp. of Washington* v. *Ridgewood* (1958), 26 N.J. 578, 584, 141 A. 2d 308, 311. Because of its difficulty of application and tenuous nexus with the realities of governmental activity, we believe that the governmental-proprietary distinction serves no useful purpose in the field of municipal zoning.

In most instances, the conflict between one government's power to condemn and another's power to restrict the use of land is more apparent than real. See *Richmond* v. *Bd. of Supervisors* (1958), 199 Va. 679, 101 S.E. 2d 641. Whenever possible, the divergent interests of governmental entities should be harmonized rather than placed in opposition. *St. Louis County* v. *Manchester* (Mo. 1962), 360 S.W. 2d 638, 640. Thus, unless there exists a direct statutory grant of immunity in a given instance, the condemning or land-owning authority must make a reasonable attempt to comply with the zoning restrictions of the affected political subdivision. Cf. *Twp. of Washington* v. *Ridgewood, supra* (26 N.J., at 584-585); *Long Branch Div.* v. *Cowan* (App. Div. 1972), 119 N.J. Super. 306, 310, 291 A. 2d 381.

The issue of governmental immunity from zoning arises only after efforts to comply with municipal zoning have failed. Where compliance with zoning regulations would frustrate or significantly hinder the public purpose underlying the acquisition of property, a court should consider, *inter alia,* the essential nature of the government-owned facility, the impact of the facility upon surrounding property, and the alternative loca-

tions available for the facility, in determining whether the proposed use should be immune from zoning laws. Cf. *Oronoco* v. *Rochester* (1972), 293 Minn. 468, 197 N.W. 2d 426.

In the instant cause, the state of Ohio made no effort to comply with the Akron zoning ordinance, nor does it appear that it considered the impact of the proposed halfway house upon the surrounding neighborhood. For this reason, we do not reach the question of whether the proposed use should be immune from the Akron ordinance.

In any event, the Court of Appeals failed to pass upon appellants' contention that the trial court erred in finding the proposed halfway house to be a permitted use in a single-family residential district. We therefore reverse the judgment of the Court of Appeals and remand the cause for a determination on that issue.

*Judgment reversed*
*and cause remanded.*

CELEBREZZE, C. J., HERBERT, W. BROWN, SWEENEY and HOLMES, JJ., concur.

P. BROWN and LOCHER, JJ., concur in the judgment.