CITY OF EAST CLEVELAND, APPELLANT AND
CROSS-APPELLEE, *v.* BOARD OF COUNTY COMMISSIONERS
OF CUYAHOGA COUNTY ET AL., APPELLEES AND
CROSS-APPELLANTS.

[Cite as East Cleveland v. Bd. of County Commrs.
(1982), 69 Ohio St. 2d 23.]

(No. 80-1609 — Decided January 13, 1982.)

*Messrs. Walter, Haverfield, Buescher & Chockley* and *Mr. Henry B. Fisher,* for appellant and cross-appellee.

*Mr. John T. Corrigan,* prosecuting attorney, *Mr. Thomas P. Gill* and *Mr. Patrick Carroll,* for appellees and cross-appellants.

KRUPANSKY, J.  For the reasons discussed below, we affirm the judgment of the Court of Appeals.

## I.

The primary issue raised in the instant cause is whether the zoning provisions of a municipality may restrict or limit a county, vested with the power of eminent domain, in the use of public property for public purposes.

The trial court, relying on a line of older cases including *Doan* v. *Cleveland Short Line Ry. Co.* (1915), 92 Ohio St. 461, held that zoning ordinances of municipalities are ineffective to prevent or restrict the use of land by the state or any of its agencies vested with the power of eminent domain in the use of the land for public purposes.

While the instant cause was pending in the Court of Appeals, this court decided the case of *Brownfield* v. *State* (1980), 63 Ohio St. 2d 282. In *Brownfield,* the issue before the court was whether a state-owned facility was automatically exempt from municipal zoning restrictions. This court rejected the application of absolute governmental immunity from zoning. It reasoned:

"*** Appellees assert that the power to zone is necessarily subordinate to the power to condemn property, and that because the state has the power to take the subject property by eminent domain, the proposed halfway house is absolutely immune from local zoning laws. Although this approach has some precedential support, logic and public policy considerations dictate that we reject it.

"The principal case adopting the theory espoused by appellees is *State, ex rel. Ohio Turnpike Comm.,* v. *Allen* (1952), 158 Ohio St. 168, certiorari denied 344 U. S. 865. One of the arguments propounded by the respondent in *Allen* was that the proposed Ohio Turnpike was to pass through territory that had been zoned, and that the turnpike would constitute a use in violation of the local zoning ordinances. This court, relying upon *Doan* v. *Cleveland Short Line Ry. Co.* (1915), 92 Ohio St. 461, rejected that argument, and held that zoning restrictions do not apply to state agencies vested with the power of eminent domain.

"The *Allen* court's reliance upon *Doan* was misplaced, however. *Doan* merely held that restrictive covenants imposed by a subdivision developer cannot be enforced against agencies

possessing the power to condemn. This court's decision in *Doan* was based upon the reasoning that:

" 'The right of eminent domain rests upon public necessity, and a contract or covenant, or plan of allotment, which attempts to prevent the exercise of that right is clearly against public policy and is therefore illegal and void.' *Doan, supra,* at 468-469.

"While this rationale is reasonably applicable to conflicts between private individuals and entities possessing eminent domain powers, it should not be extended to intergovernmental conflicts. Both the municipality's exercise of its zoning powers and the state's exercise of the power of eminent domain are intended to effectuate public purposes. While we agree with the judgment in *Allen,* we must reject its reasoning and the extension of the rule set forth in *Doan. We believe that the correct approach in these cases where conflicting interests of governmental entities appear would be in each instance to weigh the general public purposes to be served by the exercise of each power, and to resolve the impasse in favor of that power which will serve the needs of the greater number of our citizens.*
" * * *

"In sum, we believe that the commonly expressed rationale for the rule of absolute governmental immunity from zoning is unsound, and we hereby reject it." (Emphasis added.) *Id.* at 284-285.

This court held that instead of applying absolute government immunity, a court should apply a balancing test, stating:

" * * * Where compliance with zoning regulations would frustrate or significantly hinder the public purpose underlying the acquisition of property, a court should consider, *inter alia* [1] the essential nature of the government-owned facility, [2] the impact of the facility upon surrounding property, and [3] the alternative locations available for the facility, in determining whether the proposed use should be immune from zoning laws." *Id.* at 286-287.

The Court of Appeals, relying on *Brownfield,* initially reversed and remanded the case to the trial court for that court to hear evidence on the issue of what impact the proposed school would have on the surrounding property. Evidence initially offered at trial on this issue had not been ad-

mitted by the trial court because of its belief that the county was absolutely immune from municipal zoning provisions. The Court of Appeals, however, after considering appellant's motion for reconsideration, broadened the remand to include a new trial at which the trial court should admit and consider all evidence relevant under the *Brownfield* balancing test, and not just evidence concerning diminution of property values.

We agree with the Court of Appeals that a new trial is necessary. Since the balancing test approach was adopted by this court subsequent to the original trial, the parties did not actively present evidence concerning the essential nature of the facility or the possibility of locating it in an area zoned to permit such use. Therefore, the trial court never reached the issue of the balancing test because it believed the county was absolutely immune from the city's zoning provisions.

We affirm the decision of the Court of Appeals and remand this cause for a new trial in order to have the trial court apply the *Brownfield* balancing test to determine whether the appellees may go forward with construction of the education center for the mentally retarded on the parcel of land owned by the county in East Cleveland.[1]

## II.

The second issue raised in this appeal is whether the county, as a state agency vested with the power of eminent domain, is subject to municipal building and fire code requirements that are in addition to those imposed by the state in R. C. Chapters 3781 and 3791.

The trial court did not reach the issue of evaluating particular ordinal sections of the East Cleveland Building and Fire Codes with respect to their constitutionality or conflict with the state provisions. Instead, the trial court held, (1) because the county possessed the power of eminent domain, it had absolute immunity from local restrictions and (2) any interference with the county's right to construct the development center by the city without express authority from the

---

[1] Since the trial court below has already determined that appellees were not guilty of want of good faith in selecting the location of the development center site, and this finding was upheld by the Court of Appeals, no further evidence on that question should be accepted at trial. Evidence may be accepted, however, on the question whether another site might be available that is already zoned to allow schools.

state could be construed only as an interference with the sovereignty of the state. The trial court also relied on language in *Niehaus* v. *State, ex rel, Bd. of Edn.* (1924), 111 Ohio St. 47, at 53-54, quoted as follows:

"* * * While within its own boundary, within the limits of the grant, * * * [a municipality] executes the functions and possesses the attributes of sovereignty, and to that extent as against its citizens and all persons within its jurisdiction has the rights and immunities of the sovereign, yet as against the sovereign [including a county] it is but an agent whose powers my be withdrawn at the will of the sovereign that granted them. Hence, the power to exercise sovereignty in local self-government, and local police power not in conflict with general law, does not confer upon municipalities the power to enact and enforce legislation which will obstruct or hamper the sovereign in the exercise of a sovereignty not granted away."

As previously stated in this opinion, the trial court erred in holding that the county was absolutely immune from local regulations. This is as true of municipal building and fire codes as it is of municipal zoning ordinances. Because no specific controversy was reached, raised and adjudicated at the trial court concerning various municipal building and fire code provisions, there is no specific question concerning a conflict before this court. Therefore, we affirm the decision of the Court of Appeals to remand to the trial court for initial determination on the basis of the *Brownfield* balancing test and prior case law the question whether and to what extent the county must comply with the municipal building and fire codes.

### III.

When the city refused to process the building plans and specifications for the mental retardation developmental center, the county submitted the plans to the state Department of Industrial Relations, Division of Factory and Building Inspection, which certified the plans as approved, with minor changes. The trial court held that the Division of Factory and Building Inspection was without jurisdiction to certify the plans because the city had a building department which was

certified pursuant to R. C. 3781.10 (E).[2] R. C. 3791.04, in relevant part, provides:

"*Before entering into contract for or beginning the construction, erection, or manufacture of any building* to which section 3781.06 of the Revised Code is applicable, including all industrialized units, *the owner thereof shall,* in addition to any other submission of plans or drawings, specifications, and data required by law, *submit the plans or drawings, specifications, and data prepared for the construction, erection, and equipment thereof,* or the alteration thereof or addition thereto, which plans or drawings, and specifications shall indicate thereon the portions that have been approved pursuant to section 3781.12 of the Revised Code, for which no further approval shall be required, *to the municipal, township, or county building department having jurisdiction if such department has been certified as provided in division (E) of section 3781.10 of the Revised Code,* and if there is no certified municipal, township or county building department, to the chief of the division of workshops and factories, for approval." (Emphasis added.)

The Court of Appeals affirmed the trial court's order requiring the county to submit the plans to the East Cleveland Building Department.

The county asserts that the certificate of the Division of Factories and Building Inspection is valid and that there is no need to re-submit the plans to the city building department. The county's argument, however, must fail for two reasons. First, depending on the outcome of the retrial on the *Brownfield* balancing test, the county may be held to some or all of the city's building and fire code provisions. Second, if the county felt that the city improperly failed to act on its plans originally, it should have gone to the Board of Building Appeals pursuant to R. C. 3781.19, and not to the Division of Factories and Building Inspection.[3]

---

[2] R. C. 3781.10, in relevant part, provides:
"The board of building standards shall:
"* * *
"(E) Certify municipal, township, and county building departments to exercise enforcement authority and to accept and approve plans and specifications, and make inspections pursuant to sections 3781.03 and 3791.04 of the Revised Code."

[3] R. C. 3781.19, in relevant part, provides:

Therefore, we affirm the decision of the Court of Appeals, upholding the trial court's order requiring the county to obtain a building certificate from the city building department and finding the certificate issued by the Division of Factories and Building Inspection to be invalid.

## IV.

The final issue raised in this appeal is whether a municipality has the authority to charge a county a fee for the review of plans and specifications by the municipality's building department for the construction of a county project. The trial court held that a municipality did not have such authority, and the Court of Appeals affirmed.

In *Niehaus, supra* (111 Ohio St. 47), paragraph two of the syllabus provides:

"The General Assembly of the state having enacted a general law requiring the building inspection departments of municipalities having a regularly organized building inspection department to approve plans for the construction of public school buildings erected within such municipalities, a municipality is without power to thwart the operation of such general law by the enactment of an ordinance requiring the payment of a fee as a condition precedent to compliance therewith."

Since 1924, when *Niehaus* was decided, the General Assembly has not expressly granted a municipality the right to charge a fee. In R. C. 3791.07, however, the state Board of Building Standards is expressly authorized to charge a fee for

"In the enforcement by any department of the state or any political subdivision of Chapters 3781 and 3791, and sections 4101.083, 4101.084, 4104.02, 4104.06, 4105.011, and 4105.11 of the Revised Code and any rule made thereunder, such department is the agency referred to in sections 119.07, 119.08, and 119.10 of the Revised Code. The board of building appeals is the agency within the meaning of sections 119.09 to 119.13 of the Revised Code, which shall conduct the adjudication hearing referred to in such sections and required by section 3781.031 of the Revised Code.

"In addition to the provisions of Chapter 119 of the Revised Code, the board of building appeals, as the agency conducting the adjudication hearing, may reverse or modify the order of the enforcing agency if it finds that the order is contrary to, or to a fair interpretation or application of Chapters 3781, 3791, and 4104, and sections 4101.083, 4101.084, 4105.011, and 4105.11 of the Revised Code and any rule made thereunder, or that a variance from the provisions of such laws or any rule made thereunder, in the specific case, will not be contrary to the public interest where a literal enforcement of such provisions will result in unnecessary hardship."

review of plans and specifications.[4] In the absence of such a provision for municipalities, we must infer that the General Assembly intends that municipalities not charge a fee for review of plans and specifications. Therefore, the decision of the Court of Appeals on this issue is affirmed.

Accordingly, the judgment of the Court of Appeals is affirmed in all respects.

*Judgment affirmed.*

SWEENEY, HOLMES and C. BROWN, JJ., concur.

LOCHER, J., concurs in the judgment.

W. BROWN, J., concurs in the opinion in regard to Parts I, II and III, but dissents as to part IV.

CELEBREZZE, C. J., dissents.

---

[4] R. C. 3791.07 provides:

"The board of building standards may establish such reasonable inspection fee schedules as it determines necessary or desirable relating to the inspection of all plans and specifications submitted for approval to the division of workshops and factories, and all industrialized units inspected at the point of origin and at the construction site of the building. The inspection fee schedule established shall bear some reasonable relationship to the cost of administering and enforcing the provisions of Chapters 3781 and 3791 of the Revised Code. The total fee charged for the inspection of plans for a single structure shall not exceed two thousand dollars."