TAYLOR ET AL., APPELLEES, *v.* THE STATE OF OHIO, DEPARTMENT OF REHABILITATION AND CORRECTION, APPELLANT; CITY OF CLEVELAND, APPELLEE.

(No. 87AP-360—Decided January 28, 1988.)

*Joseph R. Compoli, Jr.,* for appellees Taylor et al.

*Anthony J. Celebrezze, Jr.,* attorney general, *Simon B. Karas, Sally Ann Walters* and *Thomas L. Rosenberg,* for appellant.

*James P. Mancino, Anthony J. Garofoli* and *Jack D. Maistros,* for appellee city of Cleveland.

WHITESIDE, J. Defendant and third-party plaintiff, state of Ohio,[1] appeals from a decision of the Ohio Court of Claims and raises the following assignments of error:

"I. The court below erred in requiring defendant to apply for a zoning variance where the applicable zoning code does not permit such a variance to be granted. *Brownfield* v. *State,* 63 Ohio St. 2d 282 (1980) does not require the performance of a vain act.

"II. The court below erred in holding H.B. 530 not to be a general law.

"III. The court below erred in dismissing the third party complaint against the city of Cleveland on the basis of lack of jurisdiction."

In 1982, the Ohio General Assembly enacted Am. Sub. H.B. No. 530 which provides for a comprehensive statewide plan for the location and construction of fourteen new state prisons. 139 Ohio Laws, Part II, 3004. The bill, as amended in 1984, authorizes the expenditure of funds for a northeastern Ohio reformatory to be built "at a site that is wholly or partly within Cuyahoga County and that is within the regularly scheduled service area of one or more modes of public transportation * * *." 140 Ohio Laws, Part I, 615. In late 1984, the site of an abandoned automobile plant on Coit Road in Cuyahoga County within the city limits of Cleveland was determined by the Department of Rehabilitation and Correction to be the most feasible site for a five-hundred-bed reformatory. This property is zoned "general industrial" under Section 345.04(a) of the Cleveland Zoning Code which specifically prohibits the construction of a building for human habitation within a general industrial district. The parties agree that there is no site within the city of Cleveland which is appropriately zoned for a correctional facility.

In early 1985, opposition to the use of the site for a reformatory was voiced by area residents who formed an association called Citizens Opposing Prison Site ("COPS"). In response to this opposition, the Director of the Department of Rehabilitation and Correction appointed a citizens advisory council composed of area residents. This council recommended that the reformatory be built on the Coit Road site. The property was then purchased by defendant and architectural plans for the project were developed.

In June 1986, the city of Cleveland passed Ordinance No. 1682-86 which forbids the use of any city resources, funds, credit or facilities for the planning, construction, maintenance or operation of any state correctional facility within the limits of the city of Cleveland. The ordinance makes it a misdemeanor for Cleveland city employees to perform duties, to issue permits, to process applications for zoning variances or changes, to provide police and fire protection or to provide water and electrical services in connection with the planning, construction, maintenance or operation of any state correctional facility within the Cleveland city limits. Plaintiffs brought this action in the Court of Claims to prevent construction of the

---

[1] Although many references in the pleadings are to the Department of Rehabilitation and Correction, pursuant to R.C. 2743.02(E), only the state of Ohio is a party defendant.

reformatory at the Coit Road site claiming that the anticipated use violates the Cleveland Zoning Code and that the city of Cleveland, since the passage of Cleveland Ordinance No. 1682-86, was prohibited from granting a zoning change. Defendant filed an answer and a third-party complaint against the city of Cleveland contending that the Cleveland ordinance, if so construed, is unconstitutional.

After a one-day trial, the Court of Claims enjoined defendant from proceeding with construction of the prison facility on Coit Road, stating that "any attempt by defendant to go forward with plans to build a prison in Cleveland must entail an attempt to overcome the Cleveland zoning ordinance." The trial court determined that Am. Sub. H.B. No. 530 and its subsequent amendments which authorize the building of a state correctional facility, wholly or partly in Cuyahoga County, was a valid exercise of state legislative authority but was not a general law in conflict with the Cleveland city ordinance adopted under the home rule provision found in Article XVIII of the Ohio Constitution. Consequently, the trial court found the Cleveland city ordinance valid as applied to defendant. The trial court dismissed defendant's third-party complaint for lack of jurisdiction, declining to rule on the constitutionality of the Cleveland city ordinance.

Defendant, in its first assignment of error, contends that the trial court erred by requiring defendant to apply for a zoning variance when that action would be an empty gesture in light of the Cleveland ordinance restricting city employees from processing such an application. We find defendant's first assignment of error to be well-taken since the trial court misapplied current case law by requiring that defendant comply, not with local zoning restrictions, but, rather, with municipal zoning *procedures*. Both the defendant and the plaintiffs place great emphasis on the procedures to be followed under the Cleveland ordinance. We find this emphasis to be misplaced. The state is not required to apply to Cleveland for permission to perform an essential state function within the city of Cleveland. Nor is a state agency (in the absence of a specific statutory requirement) required to apply to a court for a judicial determination as to appropriateness before establishing a place to perform an essential state function within the city of Cleveland.

Section 2, Article XVIII of the Ohio Constitution provides that the General Assembly prescribes the procedures to be followed by municipalities unless the municipality has adopted a charter pursuant to Section 7, Article XVIII, Ohio Constitution.

However, Section 3, Article XVIII, Ohio Constitution, adopted in 1912, grants to all municipalities certain powers of home rule, stating specifically:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

Prior to the adoption of this constitutional provision, municipalities were dependent upon a legislative grant of authority to enact local police, sanitary, and similar regulations. As a consequence of the addition of Section 3, Article XVIII, Ohio Constitution, municipalities are granted full legislative power to adopt local police, sanitary, and similar regulations so long as they are not in conflict with general law adopted by the General Assembly. This power is one derived directly from the Ohio Constitution.

In *Pritz* v. *Messer* (1925), 112 Ohio St. 628, 149 N.E. 30, the Supreme Court held that under this home rule provision, municipal corporations are empowered to adopt and enforce comprehensive zoning regulations. This power exists separately from and concurrently with statutory provisions such as R.C. 713.01 to 713.14, which authorize municipal zoning to be established by city planning commissions. However, R.C. 713.14 clarifies the legislative intent as to the zoning power of municipalities, as opposed to municipal governmental structure. See Sections 2 and 7, Article XVIII, Ohio Constitution.

In juxtaposition to Cleveland's power to adopt and enforce comprehensive zoning regulations is the state's power as a sovereign to acquire property for a particular use under the law of eminent domain, as well as the power of the state to exercise and perform essential state functions within the city of Cleveland. Clearly, a municipal corporation may not use its home rule power to control the state in its exercise of state governing power. Under R.C. 5120.46, the Ohio General Assembly has specifically conferred the power of eminent domain upon the Department of Rehabilitation and Correction.

The Ohio Supreme Court addressed the problem of conflict between city zoning restrictions and the state's power of eminent domain in *Brownfield* v. *State* (1980), 63 Ohio St. 2d 282, 17 O.O. 3d 181, 407 N.E. 2d 1365. The *per curiam* opinion stated that "[b]oth the municipality's exercise of its zoning powers and the state's exercise of the power of eminent domain are intended to effectuate public purposes." *Id.* at 285, 17 O.O. 3d at 183, 407 N.E. 2d at 1367. The conflict pertains only to the location that the state selects on which to exercise state power. The court stated that the cor-

rect approach to resolve "conflicting interests of governmental entities" is to "weigh the general public purposes to be served by the exercise of each power, and to resolve the impasse in favor of that power which will serve the needs of the greater number of our citizens." *Id.* The court recognized that the municipal and state interests may not necessarily conflict and that "[u]nless a municipality completely prohibits a certain use within its corporate limits, the state may acquire property for that use and still comply with local zoning restrictions." *Id.* However, if the municipality does completely prohibit a certain use within its corporate limits, such prohibition does not operate to prevent the state from performing essential state governmental functions within such corporate limits.

In *Brownfield,* the court recognized that it was possible for "the state of Ohio to both purchase property for use as a halfway house and comply with the land use scheme of the city of Akron." *Id.* The court rejected "the commonly expressed rationale for the rule of absolute governmental immunity from zoning" as "unsound." *Id.* Recognizing that often the conflict of interest between city and state is more apparent than real, the Ohio Supreme Court stated that, whenever possible, the divergent interests of governmental entities should be harmonized. *Id.* at 286, 17 O.O. 3d at 183, 407 N.E. 2d at 1368. The court then set forth a two-step procedure to ensure that an attempt would be made to harmonize the city and state interests. The court required that first, reasonable effort be made by the property-owning governmental agency to comply with local zoning use restrictions, stating:

"* * * [U]nless there exists a direct statutory grant of immunity in a given instance, the condemning or landowning authority must make a

reasonable attempt to comply with the zoning *restrictions* of the affected political subdivision." (Emphasis added.) *Id.* at 286, 17 O.O. 3d at 183-184, 407 N.E. 2d at 1368.

The court went on to state that a second step may be necessary in those cases where efforts by the property-owning agency to comply with local zoning has failed, stating:

"The issue of governmental immunity from zoning arises only after efforts to comply with municipal zoning have failed. Where compliance with zoning regulations would frustrate or significantly hinder the public purpose underlying the acquisition of property, a court should consider, *inter alia,* the essential nature of the government-owned facility, the impact of the facility upon surrounding property, and the alternative locations available for the facility, in determining *whether the proposed use should be immune from zoning laws.* * * *" (Emphasis added.) *Id.* at 286-287, 17 O.O. 3d at 184, 407 N.E. 2d at 1368.

*Brownfield* requires the condemning or land-owning authority to attempt to comply with zoning *land-use* restrictions. The condemning authority must use reasonable efforts to comply with existing zoning land-use schemes or plans but need not comply with existing procedures to obtain permits, variances or changes in existing zoning from local authorities as a prerequisite to the exercise of state governmental functions that the state authority is required by law to perform. *Brownfield,* although not explicit in defining the term "zoning restrictions" in the two-step test, refers several times to attempted compliance with *"land-use schemes."* Never does *Brownfield* mention or contemplate compliance with local zoning *procedures* to obtain an exception to current zoning use restrictions. Consequently, we interpret the *Brownfield*

requirements to mean that the condemning or land-owning governmental agency must make a reasonable attempt to comply with existing zoning land-use restrictions by making reasonable efforts to the extent feasible to locate in an area zoned to permit the intended use or by making a reasonable attempt to comply with the zoning use restrictions of the area in which the facility is located. If reasonable efforts to comply with land-use restrictions fail, then, and only then, does a court make a determination based on the factors stated in the second requirement of *Brownfield.*

The condemning or land-owning agency is not required to follow a locally prescribed set of procedures to obtain the approval of the local zoning agency of the propriety of the use proposed by the condemning or land-owning agency in relation to the existing land-use restrictions. Rather, the condemning or land-owning agency need merely show that it has made every reasonable effort to comply with existing local land-use restrictions or that it is impossible both to comply with local zoning use restrictions and use the property for the essential state governmental use contemplated. If the agency so shows, the court must then apply the *Brownfield* factors to make a determination as to whether the condemning or land-owning agency is entitled to immunity from the existing local land-use restrictions.

In light of the foregoing, defendant's first assignment of error is sustained. *Brownfield* does not require defendant to apply to the Cleveland Zoning Board for a zoning variance, nor otherwise to make application to Cleveland offices for approval of the proposed use. Even if *Brownfield* so required, by the adoption of Ordinance No. 1682-86, Cleveland has elected not to make zoning procedures available to the state to accomplish the harmoniz-

ing of interests through action of local zoning authorities.

Defendant, in its second assignment of error, contends that the court below erred by holding that Am. Sub. H.B. No. 530 is not a general law. In the light of *Brownfield*, whether Am. Sub. H.B. No. 530 is a "general" law is not determinative since the "conflict" is not between a statute and an ordinance, but rather between the exercise of governmental power of the state as to acquisition and use of state land located in a municipality and a municipal zoning ordinance.

Here, there are two different local legislative actions. First, Ordinance No. 1682-86 is not a police or similar regulation and, thus, does not fall within Section 3, Article XVIII, Ohio Constitution. Rather, that ordinance would fall within Section 2 or 7, Article XVIII, Ohio Constitution as a regulation of local government (that is, governmental structure) prohibiting city officials from performing certain functions. Ordinance No. 1682-86 does not conflict with Am. Sub. H.B. No. 530, since it deals with a different subject. Ordinance No. 1682-86 deals with the authority of local offices to act, while Am. Sub. H.B. No. 530 deals with the duty of state offices to locate a facility in Cuyahoga County.

However, Ordinance No. 1682-86 does represent an election by the city of Cleveland that the state proceed with its plans for establishing the correctional facility without consulting with Cleveland officials, leaving resolution of the zoning issue to the courts if an action is brought by residents in the vicinity or by Cleveland.

Section 345.04 of the Cleveland Zoning Code is a local police or similar regulation but it does not directly conflict with Am. Sub. H.B. No. 530. The statute confers certain power and duties upon the Department of Rehabilitation and Correction, the proper,

reasonable and feasible exercise of which may involve action which would violate the Cleveland Zoning Code if such code be applicable under the circumstances to the contemplated state facility. Section 345.04 of the Cleveland Zoning Code is contended by plaintiffs to prohibit the state from using the state-owned land for a use which the city of Cleveland does not approve of anywhere in Cleveland.

One essential issue is whether the city of Cleveland can prohibit the state of Ohio from acquiring and using land anywhere within the city of Cleveland for a purpose of which Cleveland does not approve. That is, whether Cleveland can prohibit the state from establishing a state facility in Cleveland. The issue is similar to that in *Blue Ash* v. *Cincinnati* (1962), 173 Ohio St. 345, 19 O.O. 2d 274, 182 N.E. 2d 557, wherein Cincinnati attempted to use its power of eminent domain to acquire land owned by another public agency and to destroy the public use of such land by the other agency. The court held that Cincinnati could not destroy the use of the land by the other agency, rejecting Cincinnati's "paramount public need" argument. See, also, *Bd. of Edn.* v. *Proprietors of Akron Rural Cemetery* (1924), 110 Ohio St. 430, 144 N.E. 113, and *Railroad Co.* v. *Belle Centre* (1891), 48 Ohio St. 273, 27 N.E. 464. Similarly, here, the city of Cleveland, through exercise of its zoning powers cannot destroy the right of the state to establish a correctional facility within the city of Cleveland, although under *Brownfield* some balancing of interests and minimizing of the effect upon other property in the vicinity may be required.

The trial court, in response to defendant's argument that the Cleveland city ordinance conflicts with the general law of Ohio and is, therefore, invalid, determined that Am. Sub. H.B. No. 530 is not a general law. The

*Brownfield* rule is not dependent upon a general law versus local ordinance analysis when the state interest requires a use of state property which would be inconsistent with the use restriction of a local zoning ordinance.

The conflict here is between exercise of power between two state instrumentalities: (1) the home rule power of Cleveland to adopt local zoning regulations and (2) the power of an agency of state government to acquire land to use in performance of its essential public functions. Under such circumstances of conflict, the agency of state government must make reasonable efforts to comply with local zoning, but if compliance with local zoning would in the opinion of the state agency prevent it from performing its essential governmental duties, it may proceed unless enjoined by a court of competent jurisdiction. If the court determines that the state agency, requesting immunity from the local zoning ordinance, has reasonably attempted to comply with the local zoning use restrictions, the remaining judicial determination necessarily involves consideration of the factors enumerated in the second step of the *Brownfield* test.

A lengthy analysis of whether an act of the state legislature is or is not a general law is unnecessary to the resolution of the issue. We must note that here the distinction is not between general and special laws, but rather, is between a local law that involves a police regulation and a general law that does not. See *West Jefferson* v. *Robinson* (1965), 1 Ohio St. 2d 113, 30 O.O. 2d 474, 205 N.E. 2d 382. As stated above, the instant issue is one of the extent of home rule power where a general state interest conflicts with a local interest. Accordingly, defendant's second assignment of error is not well-taken.

Defendant, in its third assignment of error, contends that the Court of Claims erred when it dismissed defendant's third-party complaint against the city of Cleveland. We do not agree.

Plaintiffs, Richard Taylor et al., brought suit in the Court of Claims against the state seeking injunctive relief to prevent construction of the reformatory. Finding itself before the Court of Claims, defendant, under Civ. R. 14, brought the city of Cleveland as a third-party defendant into the action and sought a declaratory judgment as to the constitutionality of the Cleveland city ordinance. Defendant now contends that, because there were no questions of liability on the part of the city to the defendant, it was incorrect to style the pleadings as a third-party complaint. Instead, defendant contends the pleadings should be viewed as to substance and not as to form and be construed as an attempt to make the city of Cleveland a party to the action as required by R.C. 2721.12 by making the state's affirmative defense of the unconstitutionality of the Cleveland ordinance a counterclaim, under Civ. R. 13, against the plaintiffs and then seeking joinder of the city as a party under Civ. R. 19(A).

Defendant, upon being sued in the Court of Claims, has the right to raise all necessary defenses, including its immunity from the Cleveland zoning ordinance under the *Brownfield* test and the unconstitutionality of the Cleveland city ordinance. Defendant need simply raise and argue the issue of the constitutionality of the Cleveland city ordinance. Making the city of Cleveland a party to this action is unnecessary for defendant's defense and it is, likewise, unnecesary for defendant to attempt to make the city a party to the action. The invalidity of the Cleveland city ordinance is a full defense to plaintiffs' claim predicated thereon and the

city of Cleveland is not a necessary party to the raising of that defense.

For the foregoing reasons, defendant's first assignment of error is sustained and the second and third assignments of error are overruled, and the judgment of the Court of Claims is reversed and this cause is remanded to that court for further proceedings in accordance with law consistent with this opinion.

*Judgment reversed and cause remanded.*

STRAUSBAUGH, P.J., and REILLY, J., concur.