**LAKETRAN BOARD OF TRUSTEES, Appellee,**

v.

**CITY OF MENTOR et al., Appellants.**

[Cite as *Laketran Bd. of Trustees v. Mentor* (1999), 135 Ohio App.3d 187.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

Nos. 98–L–083, 98–L–088.

Decided Oct. 29, 1999.

*Donald J. Ezzone Co., L.P.A., Donald J. Ezzone* and *Barry M. Byron,* for Laketran Board of Trustees.

*Calfee, Halter & Griswold, Mark I. Wallach* and *Julie A. Harris,* for Laketran Board of Trustees.

*Wiles & Richards* and *Daniel F. Richards,* for city of Mentor.

———

FORD, Presiding Judge.

The two instant appeals emanate from a final judgment of the Lake County Court of Common Pleas. Appellants, various public officials and entities associated with the city of Mentor, seek the reversal of the trial court's judgment overturning a decision of the Mentor Planning and Zoning Commission denying a conditional use permit to appellee, the Laketran Board of Trustees.[1]

———

1. Appellants are the following public officials and entities: the city of Mentor; the Mentor City Council; Edward Walsh, City Council President and Mayor of Mentor; Julian M. Suso, Mentor City Manager; I. James Hackenberg, Mentor Law Director; the Mentor Planning and Zoning Commission; Raymond Kirchner, Chairman of the Planning and Zoning Commission; and Daniel F. Richards, Legal Counsel for the Planning and Zoning Commission.

Appellee is a public entity that has the statutory power to manage and conduct the affairs of Laketran, the regional transit authority for Lake County, Ohio. Pursuant to R.C. 306.31, Laketran is a political subdivision of this state and exists for the primary purpose of acquiring and operating public transit facilities. As part of its general powers, under R.C. 306.35(K) Laketran has the power of eminent domain.

Consistent with its statutory purpose, Laketran operates a number of park-and-ride facilities throughout Lake County. As their name implies, these facilities essentially consist of large paved lots at which patrons can park their vehicles for significant periods of time. Laketran then provides buses that patrons can use to commute to the Cleveland metropolitan area. Thus, a park-and-ride facility is simply a large bus stop at which significant amounts of traffic converge during the mornings and evenings of a workday.

In 1995, Laketran purchased twelve acres of land located near the intersection of State Route 306 and Adkins Road in Mentor, Ohio. In making this purchase, Laketran specifically planned to build a park-and-ride facility on nine acres of the land. Laketran chose this particular parcel because it is located a short distance from State Route 2, a major four-lane highway that Lake County residents use to drive to Cuyahoga County and Cleveland. That is, Laketran believed that the parcel was an ideal location for the park-and-ride facility because its buses would have easy access to Route 2 via a large cloverleaf interchange at the intersection of Routes 2 and 306.

Pursuant to the Mentor zoning ordinance, the parcel in question is zoned for residential use only. Specifically, the zoning ordinance provides that the Laketran parcel can be used only for single-family dwellings. However, the ordinance also states that the parcel can be used for certain public facilities if a conditional use permit is obtained from the Mentor Planning and Zoning Commission.

Besides being zoned residential, the Laketran parcel is located near two residential developments that have been built within the past few years. In fact, existing homes are immediately adjacent to the east, west, and north sides of the parcel. Moreover, although the land south of the Laketran parcel is zoned for commercial use, there are no commercial buildings located on the same side of Route 2 as the Laketran parcel.

Prior to buying the parcel, Laketran's general manager, Frank Polivca, spoke to certain Mentor officials, including its city manager, about the possibility of building a park-and-ride facility upon the parcel. Based upon these conversations, Polivca thought that although Laketran would be required to satisfy certain zoning requirements, the city officials would not oppose the general plan. Accordingly, after finalizing the deal for the land, Laketran filed an application for a conditional use permit with the Mentor Planning and Zoning Commission.

Five separate hearings were conducted by the commission on the Laketran permit application. During these proceedings, Laketran presented unsworn testimony that tended to prove the following facts: (1) the parcel in question had certain characteristics that made it the ideal location from which to provide bus services for residents in that area of Lake County and (2) the operation of the park-and-ride facility upon the parcel would not adversely affect the quality of life in the adjacent residential developments and would not decrease the value of the homes.

Even though its officials had previously indicated they would not oppose the plan for the park-and-ride facility, the city of Mentor presented unsworn testimony during the commission hearings that essentially contradicted Laketran's testimony on the two foregoing points. That is, the city's expert witnesses not only testified that there were other parcels of property in this general vicinity tgat would be a good site for a park-and-ride facility, but that the air and noise pollution emitted from the Laketran parcel would harm the adjacent residential developments.

After receiving the conflicting evidence, the commission orally voted at the end of the fifth hearing to deny Laketran's application for a conditional use permit. Once this decision had been journalized, Laketran filed an administrative appeal with the common pleas court, pursuant to R.C. 2506.01.

In conjunction with the administrative appeal, Laketran also brought a declaratory judgment action against appellants, seeking to have the Mentor zoning ordinance declared unconstitutional as applied to it. As part of its complaint in that action, Laketran alleged that it, as a distinct political subdivision under R.C. 306.31, was immune from the enforcement of the zoning ordinance. However, before any type of hearing could be held on that complaint, Laketran voluntarily dismissed it under Civ.R. 41(A).[2]

Once the record of the commission proceeding had been filed in the administrative appeal, appellants moved for leave to submit additional evidence to the trial court under R.C. 2506.03(A). In support of this motion, appellants primarily argued that the evidence submitted to the commission had not been presented in the proper manner. Even though Laketran objected to the motion, the trial

---

2. Following the dismissal of the declaratory judgment case, the clerk of courts continued to file entries in the record of that case. These entries were identical to the entries that were being issued in the administrative appeal. Therefore, when the trial court issued its final judgment in the administrative appeal, a copy of the judgment was also entered upon the record of the declaratory judgment case.

In turn, when appellants filed their notice of appeal from the final judgment in the administrative action, they also filed a separate notice of appeal in the declaratory judgment case. Although the records of both cases do not show why this confusing procedure was followed, it does explain why there are two appeals pending before us.

court granted it. As a result, a new evidentiary hearing was conducted before the trial court.

As a part of the new hearing, the parties presented the testimony of multiple expert witnesses. Much of this new testimony duplicated testimony the parties had presented during the commission proceedings; in fact, the parties recalled many of the witnesses who had given unsworn testimony previously. Moreover, the new testimony focused upon the same two factual issues that had been tried before the commission.

Based upon the new testimony, the trial court held that Laketran had been entitled to the issuance of a conditional use permit. In the first part of its analysis, the court concluded that the usual standard governing the issuance of a conditional use permit was not controlling in this instance. Citing precedent of the Ohio Supreme Court, the court stated that because Laketran was a political subdivision, it would be entitled to build the proposed facility if the benefits of the facility were so extensive as to justify imposing a burden upon the adjacent homes in the residential developments.

Turning to the factual issues, the trial court first found that Laketran had proven that none of the sites suggested by appellants as alternatives for the proposed facility were just as suitable as the Laketran parcel. Second, the court found that the benefits of a park-and-ride facility would be significant. Third, the court found that any harm to the value of the homes in the residential developments would be minimal in contrast to the benefit to the entire community. Accordingly, the court concluded that because the placing of a burden upon the adjacent homes was justified, the commission's decision to deny the conditional use permit had been illegal and unreasonable by a preponderance of the evidence.

In now appealing this judgment, appellants have assigned the following as error:

"The trial court erred to the prejudice of defendants/appellant[s] in failing to take into consideration the record made before the administrative body.

"Even assuming that the trial court took into consideration the record made before the administrative body, the court erred to the prejudice of defendant[s]/appellant[s] in failing to give due deference to the decision of the administrative body.

"The trial court erred to the prejudice of defendant[s]/appellant[s] by reversing the decision of the Mentor Planning Commission after having heard the evidence at trial."

Under their first two assignments, appellants challenge the propriety of the procedure followed by the trial court in rendering its decision. First, appellant argues that in making its findings of fact, the trial court failed to consider the

evidence that was presented to the commission during the administrative hearing. Second, they maintain that the court's decision was improper because the court failed to show any deference to the holding of the commission.

Upon reviewing the record before us, this court would generally agree that the trial court did not adhere to the appropriate procedure that must be followed in an administrative appeal. Nevertheless, for the following reasons, we hold that the merits of these two arguments do not warrant our full consideration because the type of decision rendered by the trial court should not have been made in the context of an administrative appeal. Specifically, we conclude that the judgment of the trial court must be reversed because the issue of the immunity of a political subdivision can only be made in a declaratory judgment action.

As was noted previously, the trial court held in its judgment that the basic standard for reviewing the merits of an administrative decision was inapplicable to the instant case. In support of this holding, the trial court cited the decision of the Ohio Supreme Court on *Brownfield v. State* (1980), 63 Ohio St.2d 282, 17 O.O.3d 181, 407 N.E.2d 1365.

In *Brownfield*, a state agency bought a home in a residential area for the purpose of using it as a halfway house for the mentally ill. The residents of the area then filed a declaratory judgment action against the agency, claiming that the proposed use of the home violated the local zoning ordinance. As part of its defense to the action, the state agency argued that it was immune from the enforcement of the ordinance.

In reviewing the judgment in favor of the state agency, the Ohio Supreme Court first rejected the agency's contention that it was absolutely immune. Nevertheless, the *Brownfield* court then indicated that in situations where there is a conflict between the state's power of eminent domain and a municipality's zoning power, a special test was needed to determine which power is controlling: "We believe that the correct approach in these cases where conflicting interests of governmental entities appear would be in each instance to weigh the general public purposes to be served by the exercise of each power, and to resolve the impasse in favor of that power which will serve the needs of the greater number of our citizens." *Id.* at 285, 17 O.O.3d at 183, 407 N.E.2d at 1367.

Later in its opinion, the *Brownfield* court further clarified the foregoing test:

"The issue of governmental immunity from zoning arises only after efforts to comply with municipal zoning have failed. Where compliance with zoning regulations would frustrate or significantly hinder the public purpose underlying the acquisition of property, a court should consider, *inter alia*, the essential nature of the government-owned facility, the impact of the facility upon surrounding property, and the alternative locations available for the facility, in determining

whether the proposed use should be immune from zoning laws." *Id.* at 286–287, 17 O.O.3d at 184, 407 N.E.2d at 1368.

■ Thus, under the *Brownfield* test, a state agency with eminent domain power can be immune from a zoning ordinance when (1) the state agency proves that it has made a good faith effort to comply with the zoning laws and (2) the balancing of the factors cited in the foregoing quote supports the finding that the public would be better served if the zoning laws were not enforced. The substance of this standard was subsequently upheld by the Supreme Court in *E. Cleveland v. Cuyahoga Cty. Bd. of Commrs.* (1982), 69 Ohio St.2d 23, 23 O.O.3d 46, 430 N.E.2d 456.

■ Obviously, the *Brownfield* standard is significantly different from the standards a zoning board would apply in determining whether to grant a variance or a conditional use permit. Accordingly, it follows that the determination whether a state agency is immune in a particular instance should be made by a court of law.

In *Taylor v. Ohio Dept. of Rehab. & Corr.* (1988), 43 Ohio App.3d 205, 540 N.E.2d 310, the trial court had held that the state had been required to obtain a zoning variance from the city of Cleveland before it could start to construct a correctional facility. In reversing this decision, the Tenth District Court of Appeals held that the state was not required to satisfy the procedure for obtaining a variance:

"*Brownfield* requires the condemning or land-owning authority to attempt to comply with zoning *land-use* restrictions. The condemning authority must use reasonable efforts to comply with existing zoning land-use schemes or plans but need not comply with existing procedures to obtain permits, variances or changes in existing zoning from local authorities as a prerequisite to the exercise of state governmental functions that the state authority is required by law to perform. *Brownfield,* although not explicit in defining the term 'zoning restrictions' in the two-step test, refers several times to attempted compliance with '*land-use schemes.*' Never does *Brownfield* mention or contemplate compliance with local zoning *procedures* to obtain an exception to current zoning use restrictions. Consequently, we interpret the *Brownfield* requirements to mean that the condemning or land-owning governmental agency must make a reasonable attempt to comply with existing zoning land-use restrictions by making reasonable efforts to the extent feasible to locate in an area zoned to permit the intended use or by making a reasonable attempt to comply with the zoning use restrictions of the area in which the facility is located. If reasonable efforts to comply with land-use restrictions fail, then, and only then, does a court make a determination

based on the factors stated in the second requirement of *Brownfield*." (Emphasis *sic*.) *Id.* at 209, 540 N.E.2d at 314–315.

Although the *Taylor* opinion does not expressly address the issue whether a zoning board can apply the *Brownfield* standard, the *Taylor* logic clearly supports the conclusion that only a court of law should make a *Brownfield* determination. As to this point, this court notes that in a subsequent opinion, the Tenth District further concluded that a state agency is not required to exhaust its administrative remedies when it seeks to invoke the defense of immunity. This conclusion was based upon the fact that the granting of administrative relief, *i.e.*, a variance, would not achieve the same result as a determination of sovereign immunity. *GTE Wireless of Midwest Inc. v. Anderson Twp.* (1999), 134 Ohio App.3d 352, 731 N.E.2d 201.

■ In regard to this point, this court emphasizes that in making a *Brownfield* determination, a court is deciding whether the state agency should be immune from the zoning laws. Traditionally, a question of immunity is one that a court of law, rather than an administrative board, has determined. Thus, even though the *Brownfield* factors might be similar to the factors a zoning board might consider in making other determinations, we conclude that a zoning board is not the proper body to determine whether a state agency is immune in a particular instance.

■ The trial court aptly noted that pursuant to R.C. 306.31, Laketran is a separate political subdivision of this state and has been given the powers of a corporation. Furthermore, under R.C. 306.35(K), Laketran has the power of eminent domain. Accordingly, because Laketran is a distinct state entity that has powers that conflict with the zoning authority, it is our position that the trial court did not err in holding that the *Brownfield* standard was applicable in this instance.

■ In light of the applicability of *Brownfield*, two further conclusions inexorably follow. First, we hold that the proceeding before the Mentor Planning and Zoning Commission was superfluous. Because the determination whether Laketran is immune from the Mentor zoning resolution will be dispositive of whether it can build the proposed park-and-ride facility, the commission's denial of the request for a conditional use permit is meaningless. Simply stated, the hearings before the commission should have never been held.

■ Second, this court concludes that even though the trial court attempted to render a *Brownfield* determination in appellee's administrative appeal, that determination cannot be upheld because it was not made in the context of a proper action. Stated differently, the fact that the *Brownfield* analysis was made in an administrative appeal cannot be considered harmless error.

In relation to this point, we emphasize that the trial court reversed the decision of the commission as part of its judgment in this matter. However, in doing so, the trial court engaged in a completely different analysis than the commission had. Thus, instead of assuming the role a common pleas court usually does in the context of an administrative appeal, the trial court in this case did not truly engage in any form of appellate review.

■ Technically, as a general proposition, if a higher tribunal determines that the lower one failed to apply the correct legal analysis, the proper remedy is for the higher tribunal to remand the case to the lower one so that it could consider its findings of fact in light of the appropriate legal analysis. Yet in this particular case, the trial court could not do that because the commission does not have the authority to determine the immunity issue.

■ Moreover, as will be discussed below, we further conclude that the trial court did not apply the *Brownfield* standard in the proper manner; as a result, the parties will be required to engage in further proceedings. Under normal circumstances, in light of the various errors that have occurred in this action, we would be required to remand this action to the commission so that it could apply the correct analysis. Again, however, we cannot do that because the commission cannot make an immunity determination. Thus, we would be left with the prospect of remanding this action to the trial court for further proceedings when those proceedings should be taking place in the context of a declaratory judgment action.

Instead of perpetuating the parties' error, this court ultimately holds that the parties should be required to litigate the immunity question in the proper manner. Accordingly, upon remand, the trial court shall follow the procedure it should have invoked when the administrative appeal was first filed. That is, the trial court shall dismiss the appeal on the grounds that an administrative appeal is the improper procedure for the reasons stated in the foregoing analysis. Thus, if appellee is later granted immunity, the permit will be unnecessary. Appellee will then be free to bring a declaratory judgment action concerning the immunity issue.[3]

■ As an aside, this court further note that even if the trial court's decision had been made a proper action, the court did not apply the *Brownfield* test in a comprehensive manner. Our review of the trial court's judgment shows that the

---

**3.** As was previously noted, when appellee first filed the administrative appeal, it also brought a declaratory judgment case against appellants. As part of its complaint in the latter case, appellee expressly raised the immunity issue. However, for some inexplicable reason, appellee subsequently dismissed the declaratory judgment action and proceeded solely under the administrative appeal.

court made findings relevant only to the second step of the *Brownfield* analysis. That is, the court made findings relevant to the factual issue whether Laketran's proposed use of the parcel would bring greater benefit to the entire community than the harm that would result from the nonenforcement of the zoning ordinance. Moreover, the court made findings relevant to the factors cited in *Brownfield*, which must be balanced in making the ultimate finding under the second step.

Before a trial court can engage in the second step of the *Brownfield* test, though, the court must first determine whether the state agency has made a reasonable effort to comply with the zoning requirements. The trial court never made such a finding, which is consistent with its applying administrative appeal mechanics. In any subsequent case in which the parties litigate the immunity issue, the trial court will be required to make specific findings on the first step of the *Brownfield* test. Such findings will be predicated upon evidence as to whether appellee has made a reasonable effort to comply with both the Mentor zoning ordinance and the reasonable requests of the city officials.

Pursuant to the foregoing analysis, this court concludes that the trial court erred in rendering its decision concerning appellee's immunity in the context of an administrative appeal. To the extent that appellant's first two assignments challenge the propriety of the procedure followed by the trial court, they have merit.

Under their final assignment, appellants essentially maintain that the trial court's findings as to the second step of the *Brownfield* test were against the manifest weight of the evidence. Given that the trial court's decision was not made in the context of a declaratory judgment action, it is inappropriate to address the merits of this assignment at this time.

The judgment of the trial court is reversed, and the case is hereby remanded for further proceedings involving dismissal consistent with this opinion. Specifically, upon remand, the trial court shall vacate its prior judgment and issue a new judgment dismissing this administrative appeal.

*Judgment reversed*
*and cause remanded.*

NADER and WILLIAM M. O'NEILL, JJ., concur.