*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0279P (6th Cir.)
File Name: 04a0279p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

Nos. 03-1316/1418

EDWARD ROSE & SONS et al.,
*Defendants-Appellants*
*(03-1316),*

DORCHEN/MARTIN
ASSOCIATES, INCORPORATED;
ECKERT/WORDELL
ARCHITECTS, PC; GERALD
PETERSON; JAMES R. SAULE,
*Defendants-Appellants*
*(03-1418).*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-73518—Victoria A. Roberts, District Judge.

Argued: March 10, 2004

Decided and Filed: August 25, 2004

Before: SILER, MOORE, and SUTTON, Circuit Judges.

2    *United States v. Edward*     Nos. 03-1316/1418
*Rose & Sons, et al.*

_____

### COUNSEL

**ARGUED:** Frederick M. Baker, Jr., HONIGMAN, MILLER, SCHWARTZ & COHN, Lansing, Michigan, for Appellants. Gregory B. Friel, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Frederick M. Baker, Jr., HONIGMAN, MILLER, SCHWARTZ & COHN, Lansing, Michigan, Sheri B. Cataldo, Kevin J. Gleeson, Raymond P. Rogissart, SULLIVAN, WARD, ASHER & PATTON, Southfield, Michigan, Garry L. Walton, Kalamazoo, Michigan, Joseph R. Enslen, STRAUB, SEAMAN & ALLEN, St. Joseph, Michigan, for Appellants. Gregory B. Friel, Jessica Dunsay Silver, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. John P. Relman, RELMAN & ASSOCIATES, Washington, D.C., Bruce E. Lundegren, NATIONAL ASSOCIATION OF HOME BUILDERS, Washington, D.C., James W. Harris, NATIONAL MULTI HOUSING COUNCIL, Washington, D.C., for Amici Curiae.

_____

### OPINION

_____

SILER, Circuit Judge. This housing discrimination case turns on what doors must be accessible to the handicapped. At issue are two sets of apartment complexes, designed with an inaccessible front door, but an accessible back patio door. The district court granted the U.S. Justice Department ("government") a preliminary injunction halting the construction and occupancy of the buildings. The main defendant, the builder and owner, Edward Rose & Sons ("Rose"), appeals, arguing that court erred (1) by misconstruing the requirements of the Fair Housing Act,

42 U.S.C. § 3601 *et seq.* ("FHA"), and (2) by incorrectly weighing the relative preliminary injunction interests and harms.   We **AFFIRM** the district court's grant of the preliminary injunction.

## I.  FACTUAL & PROCEDURAL BACKGROUND

Defendant Rose[1] constructed and owns the nineteen apartment buildings, located in Michigan and Ohio, at issue. These buildings are at various stages of construction, but all have the same basic design. The ground floor apartments at issue have two exterior entrances - a front door and rear patio door.[2]   The front door is closer to the parking lot, but is handicapped inaccessible because it can only be reached by descending stairs. At the bottom of the stairs is a landing shared by two front doors leading into two different apartments. The rear patio entrance is accessible,[3] but is located farther from the parking lot.

The government alleged that the apartments violated the disability portions of the FHA. The district court granted a preliminary injunction, adopting the government's position that the front door was the "primary entrance" used by the public and guests, and as such, it was a "public" or "common area" that the FHA mandates be accessible. *See* 42 U.S.C. 3604(f)(3)(C)(i). In reaching this conclusion, the court relied on the Housing and Urban Development ("HUD")

---

[1]The architects of the buildings, Dorchen/Martin Associates, Eckert/Wordell Architects, James Suale, and Gerald Peterson ("architects"), were also named as defendants and have filed a brief.

[2]The use of the words "front" and "rear" here is to help paint the picture of the building. Obviously, which door is the "front" is a matter of opinion. There is no binding statutory or regulatory definition.

[3]The district court assumed the patio door accessibility for the preliminary injunction.

regulations, guidelines, and design manual. The preliminary injunction halts construction on the "covered dwellings" and restrains the defendants from occupying "covered dwellings" not yet leased.  In this case, "covered dwellings" means simply the ground floor. *See* 42 U.S.C. § 3604(f)(7) (stating if building has no elevator, only the ground floor is a covered dwelling subject to the FHA).  Rose appeals.

## II. STANDARD OF REVIEW

This court reviews the grant of a preliminary injunction for an abuse of discretion. *See Washington v. Reno,* 35 F.3d 1093, 1098 (6th Cir. 1994).  A "district court's findings of fact underlying its decision to grant a preliminary injunction are reviewed for clear error and the legal conclusions underpinning its decision are reviewed de novo." *In re Eagle-Picher Indus., Inc.,* 963 F.2d 855, 858 (6th Cir. 1992). Because a trial court's decision to grant a preliminary injunction is accorded great deference, this court should disturb such a decision only if the district court "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Washington,* 35 F.3d at 1098.

The preliminary injunction factors are: "(1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction." *Id.* at 1099. These are factors to be balanced, not prerequisites that must be met. *Id.* "[T]he district court's weighing and balancing of the equities is overruled only in the rarest of cases." *In re Eagle-Picher,* 963 F.2d at 858 (internal quotation marks omitted).  The purpose of a preliminary injunction is simply to preserve the status quo; thus, findings of fact and conclusions of law made by a

district court in granting a preliminary injunction are not binding at a trial on the merits. *University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981).

## III. ANALYSIS

### Likelihood of Success on the Merits

The basic question of this litigation is whether the space outside the front door is a public or common use area that must be handicapped accessible. We are the first circuit to consider the issue. The statute reads:

**C)** in connection with the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after September 13, 1988, a failure to design and construct those dwellings in such a manner that--

**(i)** *the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons*;

**(ii)** all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and

**(iii)** *all premises within such dwellings contain the following features of adaptive design*:

**(I)** *an accessible route into and through the dwelling*;

**(II)** light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;

**(III)** reinforcements in bathroom walls to allow later installation of grab bars; and

**(IV)** usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

42 U.S.C. § 3604(f)(3) (emphasis added).

The government asserts that because the landing at the bottom of the stairs is a "common area," § 3604(f)(3)(C)(i) mandates that the landing must be accessible. The landing in front of the entrances is not accessible because it can only be reached by the stairs. The government argues that this entrance is the "primary" door because it is in the front and closest to the parking lot. As such, it is the entrance most visitors will use, and thus the space or landing in front of the door is a public or common area. Additionally, the stair landing is shared by two entrances to two different apartment units, and thus a common area used by two tenants.

Rose correctly points out that neither the statute nor any possibly binding regulations make any reference or distinction between "primary," "front," or "back" doors. Rose argues that the government's interpretation requires almost every entrance to a unit be accessible. If the space in front of an entrance becomes a common use area, simply because people use the entrance, then the statute would require virtually every entrance to be accessible.

Rose asserts that if the space in front of virtually every entrance is a "common" or "public" area, § 3604(f)(3)(C)(iii)(I) becomes superfluous. Section 3604(f)(3)(C)(iii)(I) mandates all premises must have "*an* accessible route into and through the dwelling." (Emphasis added.). Rose contends that the indefinite article "an" indicates that the statute only requires one accessible route into each unit. As such, the space in front of every door to a

private unit cannot be a common area, or all doors would have to be accessible, and there would be no need for § 3604(f)(3)(C)(iii)(I) to separately mandate "an accessible route" into the unit. Moreover, even if there were such a thing as a single "primary" entrance, whose anterior space must be accessible as a common area, there would still be no need for § 3604(f)(3)(C)(iii)(I) to redundantly mandate "*an accessible route.*" An accessible route would already be mandated by the common area in front of the primary entrance of every unit.

We find that, in this particular case, the stair landing in front of the entrance is a common area that the statute mandates be accessible. The fact that two apartment units share the stair landing makes the space a common area. The plain meaning of "common use" unambiguously covers the entrance under dispute. At the time of the statute's enactment, dictionaries generally defined "common" as belonging to or shared by two or more individuals. *See The Oxford English Dictionary* 565 (J.A. Simpson & E.S.C. Weiner eds., Clarendon Press 2d ed. 1989) (defining common as "[b]elonging equally to more than one" and "possessed or shared alike by both or all."); *Webster's Third New International Dictionary* 458 (Philip Babcock Gove ed., Merriam-Webster 1986) ("held, enjoyed, experienced, or participated in equally by a number of individuals; possessed or manifested by more than one individual"); *Funk & Wagnalls New International Dictionary* (Publishers International Press Comprehensive ed. 1984) ("Pertaining to, connected with, or participated in by two or more persons or things; joint."). Here, the stair landing belongs to, and is shared by, two apartments, and exists for their "common use."[4]

---

[4] While our finding that the plain meaning of "common use" unambiguously covers the stair landing at issue, even if we found the statute ambiguous, the space in front of the two entrances would fall

Our ruling is narrow; we simply hold in this case that because the two apartments share the stair landing, the stair landing qualifies as a "common area" that must be accessible. We express no opinion on what the FHA would require if the stairs only led to one apartment unit entrance and decline to delve into the parties' "primary entrance" arguments because we find them unnecessary for the resolution of this case. Assuming *arguendo* that, as Rose submits, not every entrance constitutes a "common area" because otherwise § 3604(f)(3)(C)(iii)(I)'s mandate that all premises have "*an accessible route*" is superfluous, we still would find that the shared landing is a common area. Section § 3604(f)(3)(C)(iii)(I) would not be superfluous because that section would ensure that apartment units that share no entrance with another apartment unit would still have "an accessible" entrance.

In sum, we find that the stair landing qualifies as a "common area" that the FHA mandates be accessible. Thus, the government's likelihood of success on the merits is strong.

---

under the HUD regulations defining "common use area." *See generally Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837 (1984) (finding regulatory interpretation of ambiguous statute controlling if not contrary to the statute); *Meyer v. Holley*, 537 U.S. 280, 288 (2003) (Supreme Court using HUD regulations and commentary in Federal Register in interpreting the FHA). The regulation defines "common use areas" as "rooms, spaces or elements inside or outside of a building that are made available for the use of residents of a building or the guests thereof . . . includ[ing] hallways, lounges, lobbies, laundry rooms, refuse rooms, mail rooms, recreational areas and passageways among and between buildings." 24 C.F.R. § 100.201. In the instant case, the shared landing is like a common "hallway" shared by the two apartments. Thus, even if we found "common area" ambiguous, Rose still would lose under the regulations.

**The Other Preliminary Injunction Factors**

Besides the statutory interpretation, which deals with the (1) "likelihood of success on the merits" factor, the other injunction factors the court considers are (2) irreparable injury to the party seeking the injunction, (3) substantial harm to others, and (4) the public interest served by the grant of the injunction. We need not tarry because of the government's overwhelming likelihood of success on the merits.

*Irreparable Injury*

The district court presumed irreparable harm because the FHA explicitly provides for injunctive relief. Rose argues this presumption is not the law of the Sixth Circuit. We find any error by the district court of no consequence.

Under the FHA, the court "may award" a temporary injunction "for a violation" of the statute "as is necessary to assure the full enjoyment of the rights granted." 42 U.S.C. § 3614(d)(1)(A). Some circuits have ruled that when a federal statute specifically provides for injunctive relief, traditional equity principles do not apply, and a showing of irreparable harm is not required. *See, e.g., United States v. Diapulse,* 457 F.2d 25, 27-28 (2d Cir.1972). Other circuits find that the statute must have language specifically changing the traditional standards, such as language mandating that the court "shall" enjoin the activity if an agency order is disobeyed. *See, e.g., Illinois Bell Telephone v. Illinois Commerce Comm'n,* 740 F.2d 566, 571 (7th Cir. 1984). Under this second approach, if a statute confers a right to an injunction once a certain showing is made, the plaintiff need show no more than the statute specifies. *United States v. Microsoft Corp.,* 147 F.3d 935, 943 (D.C. Cir.1998). In *CSX Transportation v. Tennessee State Board of Equalization,* 964 F.2d 548 (6th Cir. 1992), the court found that "since Congress has expressly authorized the granting of injunctive relief to halt or prevent a violation of [the statute], traditional equitable

criteria do not govern the issuance of preliminary injunctions." *Id.* at 551. Like the FHA, the statute read that courts "may" grant preliminary injunctions "as may be necessary to prevent, restrain, or terminate" any violations of the statute. *Id.* at 550.

We need not decide whether *CSX* controls or whether a statute must mandate another showing that displaces the traditional equitable factors because we find it immaterial to the disposition of this case. We balance the equitable factors, and none is a prerequisite. *Washington,* 35 F.3d at 1099. The other equitable factors, particularly the strong likelihood of success on the merits, outweigh any lack of irreparable harm, with or without any presumption.

*Substantial Harm to Others*

Regarding the substantial harm to others factor, Rose asserts that it is sustaining massive monetary damage from the halt of construction and renting of the finished units, amounting to $150,000 a month. The government responds that it made Rose aware that these apartment designs violated the FHA, so Rose proceeded at its own risk. This court, in *Baker v. Adams County/Ohio Valley School Board,* 310 F.3d 927 (6th Cir. 2002), found "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended" in compliance with an injunction "are not enough." *Id.* at 930 (citation omitted). "Indeed, especially when a party knew of the risk that it undertook when it undertook the enjoined activity, monetary losses from the [sic] complying with the injunction will seldom be irreparable." *Id.* Thus, Rose voluntarily incurred any harm from the preliminary injunction.

*Public Interest*

Finally, on the public interest factor, the Supreme Court has found the FHA serves an "overriding societal priority."

*Meyer v. Holley*, 537 U.S. 280, 290 (2003); *accord Price v. Pelka*, 690 F.2d 98, 102 (6th Cir. 1982) (eradicating housing discrimination serves the "public interest").

## IV.  CONCLUSION

### Balancing the Preliminary Injunction Factors

The stair landing shared by two apartments qualifies as a "common area" that the FHA mandates be handicapped accessible.  This strong finding of a likelihood of success on the merits coupled with the public's interest in eradicating housing discrimination overcomes any weakness in the irreparable injury and harm to others factors.

AFFIRMED.