RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0165p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

TOWERCO 2013, LLC,

      *Plaintiff-Appellee/Cross-Appellant*,

    *v.*

BERLIN TOWNSHIP BOARD OF TRUSTEES; BERLIN
TOWNSHIP, OHIO,

      *Defendants-Appellants/Cross-Appellees*.

Nos. 23-3768/3799

─────────────────

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:22-cv-03294—Algenon L. Marbley, District Judge.

Argued: June 13, 2024

Decided and Filed: August 6, 2024

Before: CLAY, THAPAR, and MATHIS, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Dawn M. Frick, SURDYK, DOWD & TURNER, CO., L.P.A., Dayton, Ohio, for
Appellants/Cross-Appellees. James F. Mathews, BAKER | DUBLIKAR, North Canton, Ohio,
for Appellee/Cross-Appellant. **ON BRIEF:** Dawn M. Frick, Jeffrey C. Turner, SURDYK,
DOWD & TURNER, CO., L.P.A., Dayton, Ohio, for Appellants/Cross-Appellees. James F.
Mathews, Tonya J. Rogers, BAKER | DUBLIKAR, North Canton, Ohio, for Appellee/Cross-
Appellant.

─────────────────

## OPINION

─────────────────

CLAY, Circuit Judge. Defendants Berlin Township Board of Trustees and Berlin
Township, Ohio (collectively, the "Township") appeal the district court's order preliminarily

enjoining the Township from preventing Plaintiff TowerCo 2013, LLC's ("TowerCo") completion and deployment of a Verizon cell tower. TowerCo cross-appeals the district court's order, arguing that the district court erred in finding that the Township did not violate certain sections of the Telecommunications Act ("TCA"), including 47 U.S.C. § 332(c)(7)(B)(ii), (iii). The district court's injunction has been stayed by this Court, pending the resolution of this appeal. For the reasons set forth below, we **REVERSE** the district court's order granting a preliminary injunction, and **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual Background

In late 2019, Verizon Wireless identified a cell phone service coverage gap, or a "dead spot," in Berlin Township, Ohio. TowerCo has an ongoing agreement with Verizon to provide services that would assist in remedying this gap, including the building of telecommunications towers. Accordingly, once Verizon had identified the dead spot and a suitable site for an additional tower, Verizon then retained TowerCo to finalize the lease agreement for the building of the tower and to construct the cell tower.

With the assistance of a site acquisition firm, Verizon determined that the coverage gap could be remedied by erecting a cell tower within a centrally located half-mile radius in Berlin Township. The identified area encompassed various residential developments and property owned by the Olentangy School District (the "School District"). The companies determined that the best option would be to utilize the property owned by the School District. After engaging in a thorough back-and-forth with the School District to determine whether it would be amenable to a lease agreement for a cell tower and where the tower would be the least disruptive, the companies decided that the cell tower should be built on a lot adjacent to the school's baseball and football fields (the "Property"). The selected location for the tower had the added feature of being over 1,000 feet from the nearest residence.

With the plans for the new cell tower in motion, TowerCo executed a lease in the fall of 2021 with the School District and started preparing to construct the new tower. Because the cell tower was planned to be built on the School District's property within Berlin Township, various

local zoning regulations applied to the Project.  Initially adhering to these regulations, TowerCo issued a written notice to each resident-owner directly across from the Property of its intent to build the tower.  *See* Ohio Rev. Code § 519.211(B)(3).  The landowners could then provide written notice of their own concerns about the cell tower to the Berlin Township Board of Trustees, which would in turn trigger the application of additional zoning requirements and procedures.  *See id.* § 519.211(B)(4).

After TowerCo issued the notices, it realized that it might be able to avoid complying with any additional zoning requirements because the Property was owned and controlled by a governmental entity.  Switching strategies in an attempt to begin construction as soon as possible, TowerCo newly contended that it was immune from normal zoning procedures under an Ohio law immunity doctrine known as "*Brownfield* immunity," *see Brownfield v. State*, 407 N.E.2d 1365 (Ohio 1980), *overruled in part on other grounds by Racing Guild of Ohio, Loc. 304 v. Ohio State Racing Comm'n*, 503 N.E.2d 1025 (Ohio 1986), and was only required to make "reasonable efforts to comply with zoning requirements."  Pl.'s Mot. for Preliminary Injunction, R. 10, Page ID #1144.  Based on this Ohio-specific immunity, TowerCo asserted that the public purpose of the Project within the School District obviated any need to send the notices or adhere to any further zoning procedures.  Nonetheless, TowerCo could not un-ring the bell, as the notices regarding the cell tower had already been sent to the Township residents.

On October 20, 2021, the Township conducted a public meeting regarding the proposed cell tower.  At this meeting, the residents and trustees expressed various objections to the tower. After hearing the residents' concerns, the Township notified TowerCo that the proposed cell tower Project was required to comply with the Township's zoning regulations that govern telecommunications towers.  *See* Berlin Township Zoning Resolution § 6.04.  As relevant to the instant case, one of those zoning regulations required TowerCo to apply for a conditional use permit from the Township's Board of Zoning Appeals ("BZA").

Rather than apply for the required permit, TowerCo adhered to the view that its purported immunity status exempted it from the normal conditional use application procedures.  On November 11, 2021, TowerCo sent a letter to the Township stating that the cell tower project was "immune from application of the township's local zoning resolution."  Joint Stip. TowerCo

Letter, R. 27-4, Page ID #1735.  Approximately one week later, TowerCo sent a second letter to the Township, reiterating its position regarding immunity and explaining that TowerCo intended to move forward with the Project.  After about a month, in the absence of a reply from the Township, TowerCo "took the Township's silence as absence of further objection to the Project" and submitted a building permit application to the Delaware County Building Department.[1]  Pl.'s Mot. for Preliminary Injunction, R. 10, Page ID #1145.  On January 10, 2022, the Building Department approved TowerCo's application.

In the meantime, on December 23, 2021, the Delaware County prosecutor wrote a letter to TowerCo explaining that the asserted form of immunity was not applicable to TowerCo's situation because the cell tower was a private company's project—not a School District or government project.  TowerCo contended it did not receive this letter until January 4, 2022.  Arguing that the prosecutor's letter misunderstood the relevant law, TowerCo determined that the letter did not merit a response and, without replying, commenced construction of the cell tower on March 21, 2022.

By April 2, 2022, TowerCo was nearly finished with the construction of the 199-foot tall tower.  As the growing tower became visible from the streets and neighboring areas, the Township's trustees began to question whether TowerCo had followed the required local zoning procedures as requested.  After discovering that TowerCo independently acted without securing a conditional use permit, on May 9, 2022, the Township informed the Building Department that the tower did not comply with several local zoning regulations, and that TowerCo intentionally misled the Building Department by stating otherwise.  Based on this information, the Building Department issued a stop work order to TowerCo, but it later reversed course and lifted the order.[2]  Before TowerCo could recommence efforts to finalize construction, the Township filed a complaint in state court, as detailed below.  This state court litigation paused the nearly finalized construction of the cell tower.

---

[1]As the district court explained, "[t]he building permit from the County is distinct from a conditional use permit, which is issued by the Berlin Township Zoning Commission."  Op. & Order, R. 39, Page ID #2142 n.2.

[2]Although the Building Department lifted the stop work order "considering the advanced status of the project," it opined that TowerCo was not immune from the Township's zoning regulations.  Joint Stip. Building Permit Letter, R. 27-14, Page ID #1848.

**B. Procedural History**

On June 21, 2022, the Township filed a complaint in the Delaware County, Ohio Common Pleas Court, seeking a declaratory judgment that TowerCo was required to adhere to the regulations in Ohio Rev. Code §§ 519.02–519.25, as well as a preliminary and permanent injunction requesting that TowerCo cease any further breach of the Township's zoning regulations. Along with its complaint, the Township filed a motion for a temporary restraining order ("TRO") and preliminary injunction; the state court granted the TRO the same day. The state court's order required that TowerCo "cease all construction activities related to the proposed telecommunications / cell tower." Joint Stip. State Court TRO, R. 27-17, Page ID #1874. This TRO was set to expire after 14 days, and the state court set a preliminary injunction hearing for July 15, 2022.

On July 13, 2022, TowerCo filed its answer and various counterclaims asserting violations of the TCA. Based on the TCA counterclaims, TowerCo removed the case to federal court, asserting that the district court had original jurisdiction of the matter due to its federal counterclaims. Shortly after, and before the state court could hold the scheduled preliminary injunction hearing, the parties jointly moved to stay the state court case in order to work towards a mutual resolution. While engaged in negotiations, the Township filed a motion to remand the federal lawsuit back to state court. TowerCo elected to dismiss its federal court counterclaims and acquiesce to remand.

On August 30, 2022, the parties determined that they could not reach a resolution, and TowerCo newly filed its TCA claims in a separate federal court action the following day. TowerCo then filed an amended complaint on September 28, 2022, asserting a claim under the Takings Clause of the Fifth Amendment, once again alleging various violations of the TCA, and requesting a preliminary and permanent injunction. On December 9, 2022, TowerCo filed its motion for a preliminary injunction in federal court, the subject of the instant appeal. The parties again agreed to maintain the status quo until there was a final decision in either the state or federal action. Based on this agreement and a subsequent unopposed motion from the Township, the state court in the parallel proceedings also explicitly ordered that TowerCo maintain the status quo and not conduct any further construction activities related to the cell tower.

The district court held a preliminary injunction hearing on March 14, 2023. During the hearing, TowerCo's general counsel, Jeff Catalini, described the company's lease with the School District. Catalini testified that, though the tower had not been deployed, TowerCo still pays rent on the land during the ongoing litigation. Catalini also described the interactive process that Verizon engaged in with the School District to ensure that a suitable location for the tower was identified. As part of this explanation, Catalini described the search ring that corresponded to where Verizon needed coverage. The court next heard expert testimony from Verizon's radio frequency expert, Pergil Yabis, who further explained the existing gap in coverage and the necessity of the tower. When Yabis initially became involved in Verizon's cell tower project, he made a coverage prediction of the existing sites in the area to pinpoint the gap in cellular coverage. Based on this analysis, Yabis stated that he identified a search ring for the possible location of a new tower.

The Township's witness, Trustee Ken O'Brien, described the structure of the Berlin Township Board of Trustees and explained the Township's processes related to the application of zoning regulations. The trustees approved and authorized the various letters that the Township sent to TowerCo throughout the pendency of the tower dispute. O'Brien contended that, after authorizing the county prosecutor to send the December 23, 2021 letter advising TowerCo to go through the relevant zoning procedures, the Board of Trustees was unaware that TowerCo nonetheless proceeded with construction. Until O'Brien drove past the extremely tall structure in April 2022, he was unaware of TowerCo's unapproved construction and continued failure to follow the zoning procedures. After the trustees realized that TowerCo had not adhered to the required procedures, O'Brien sent the Delaware County Building Department a letter, resulting in the above-mentioned stop work order. Eventually, the trustees voted and decided to file a lawsuit in state court to have the zoning regulation enforced.

On August 17, 2023, the district court granted TowerCo's request for an injunction and enjoined the Township from preventing the completion and deployment of the cell tower. The Township filed its timely notice of appeal on September 18, 2023, and TowerCo provided notice of its cross-appeal on September 29, 2023. Although the district court denied the Township's motion to stay, a panel of this Court granted the Township's motion to stay the injunction

pending the outcome of this appeal.  As for the parallel state court case, the parties' litigation was stayed in June 2023.  The state court held that a stay of the proceeding was warranted because "[a] necessary implication of the issuance of a preliminary injunction by the federal court would be that the Telecommunication Act supersedes Berlin's zoning regulations as applied to this dispute," leaving substantially all of the Township's claims subject to the federal court injunction.

## II.  DISCUSSION

### A.  Standard of Review

This Court reviews the district court's issuance of a preliminary injunction under the deferential abuse of discretion standard.  *Wonderland Shopping Ctr. Venture Ltd. v. CDC Mortg. Cap., Inc.*, 274 F.3d 1085, 1097 (6th Cir. 2001).  In applying this standard of review, this Court reviews questions of law *de novo*, such as whether the movant is likely to succeed on the merits, and reviews factual determinations for clear error.  *Cf. Lexington H-L Servs., Inc. v. Lexington-Fayette Urb. Cnty. Gov't*, 879 F.3d 224, 227 (6th Cir. 2018).  The district court's ultimate determination regarding the preliminary injunction factors "will be disturbed only if the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard."  *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (quoting *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000)).  Nonetheless, it is important to evaluate the district court's decision with the guiding principle that an injunction is "an extraordinary remedy reserved only for cases where it is necessary to preserve the status quo until trial."  *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 526 (6th Cir. 2017); *see also Higuchi Int'l Corp. v. Autoliv ASP, Inc.*, 103 F.4th 400, 404 (6th Cir. 2024).

In determining whether to grant a motion for preliminary injunction, the district court must consider and balance the following four factors:  (1) the moving party's likelihood of success on the merits; (2) the moving party's likelihood of suffering irreparable injury absent the injunction; (3) the probability that granting the injunction will cause substantial harm to others;

and (4) the degree to which the injunction would serve the public interest.**3**  *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004).  The movant's likelihood of success on the merits is often the most important factor.  *See Sunless, Inc. v. Palm Beach Tan, Inc.*, 33 F.4th 866, 871 (6th Cir. 2022).  But even though the district court must make an initial determination related to the moving party's likelihood of success, the purpose of a preliminary injunction "is simply to preserve the status quo."  *Edward Rose & Sons*, 384 F.3d at 261.  Therefore, "findings of fact and conclusions of law made by a district court in granting a preliminary injunction are not binding at a trial on the merits."  *Id.* (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

### B.  The Telecommunications Act of 1996

By way of background, Congress passed the TCA in 1996 "to foster industry competition in local markets, encourage the development of telecommunications technology, and provide consumers with affordable access to telecommunications services."  *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (citing Telecommunications Act of 1996, Preamble, Pub. L. No. 104–404, 110 Stat. 56 (1996)).  As relevant to the instant case, one way in which the TCA carries out these goals is by preventing local governments from "prohibit[ing] or hav[ing] the effect of prohibiting the provision of personal wireless services."  47 U.S.C. § 332(c)(7)(B)(i)(II).  Although the TCA "preserves the authority of State and local governments with respect to [zoning regulations and approvals]," *see id.* § 332(c)(7)(A), it balances the Act's interest in encouraging development by "limit[ing] such State and local authority, thereby protecting core local and State government zoning functions while fostering infrastructure buildout," *see id.* § 332(c)(7)(B).  *In re Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B)*, 24 FCC Rcd. 13994, at ¶ 3, 2009 WL 3868811, at *1 (2009) (hereinafter "2009 FCC Ruling").

---

**3**In addition to these four factors, the district court must also "at least consider whether to order a bond before issuing an injunction" to comply with Federal Rule of Civil Procedure 65(c).  *Total Quality Logistics, LLC v. Traffic Tech, Inc.*, No. 22-3148/3377, 2023 WL 1777387, at *5 (6th Cir. Feb. 6, 2023) (citing *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 400–01 (6th Cir. 2012)).  In this case, the district court failed to even mention the word "bond" in its order granting the preliminary injunction.  However, a district court only errs when the issue of bond has been raised.  *See Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, 714 F.3d 424, 431 (6th Cir. 2013); *Roth v. Bank of Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978).  Neither party here raised the issue of bond or made a bond request before the lower court.

The relevant TCA subsection states as follows with regard to the limitations imposed upon State and local government authority over wireless service facilities zoning:

**(B) Limitations**

(i)    The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—

    (I)    shall not unreasonably discriminate among providers of functionally equivalent services; and

    (II)    shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

(ii)    A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

(iii)    Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

(iv)    No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

(v)    Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

47 U.S.C. § 332(c)(7)(B).

## C. Analysis

In its motion for a preliminary injunction, TowerCo asserted that the Township violated several subsections of the TCA, including § 332(c)(7)(B)(i)(II), (ii), (iii). The district court

found that one of TowerCo's three TCA claims was likely to succeed on the merits; specifically, the district court determined that there was a substantial likelihood that the Township's conduct had the effect of prohibiting wireless services in violation of § 332(c)(7)(B)(i)(II).  On appeal, the Township challenges the applicability of § 332(c)(7)(B) on several grounds.  First, it argues that there was no "final action" or "failure to act" by the Township, as the Township never issued an official permitting decision.  Second, the Township argues that TowerCo's claims are time-barred because TowerCo did not file its complaint within 30 days of the purported "final action" as required by § 332(c)(7)(B)(v).  Finally, the Township argues that TowerCo failed to show a substantial likelihood that the Township had effectively prohibited personal wireless services, as required by § 332(c)(7)(B)(i)(II).

As TowerCo must satisfy all three of these requirements to bring its TCA claim, TowerCo must show a likelihood of success on the merits as to all of them.  We find that TowerCo's TCA claims must fail for two reasons:  (1) there was no "final action" that enabled TowerCo to seek relief under the TCA; and (2) TowerCo failed to bring its TCA claims within the 30-day time limit in the TCA's review provision.

## 1.  Likelihood of Success on the Merits

### a.  "Final Action" Requirement:  Ripeness

In order to trigger the remedies that Congress prescribed in § 332(c)(7)(B), TowerCo must have been adversely affected by "any final action or failure to act" by the Township. § 332(c)(7)(B)(v).  Without a "final action," TowerCo's claims are not ripe under the TCA. *See T-Mobile Ne., LLC v. City of Wilmington*, 913 F.3d 311, 318–19 (3d Cir. 2019).  The Township argues that, without the denial of a permit application, no "final action" occurred, barring TowerCo's premature claims from relief under the TCA.  In response, TowerCo contends that the Township's filing of a complaint in state court constituted a "final action."  It is undisputed that TowerCo never submitted a permit application, believing that it was immune from local zoning procedures under *Brownfield v. State*, 407 N.E.2d 1365 (Ohio 1980).  It is therefore also undisputed that there is no decision denying or approving a zoning application.

Accordingly, we must determine whether the Township's litigation decisions could fit within the definition of a "final action," which is an undefined term within the TCA. In a typical TCA case, the denial of a zoning application would be considered the challengeable "final action." *See, e.g.*, *Ottawa Twp. Bd. of Trs. v. New Par*, No. 3:17CV228, 2019 WL 1923331, at *11 (N.D. Ohio Apr. 30, 2019) (when discussing the ripeness of a company's TCA claims, collecting cases to illustrate that, in the absence of an application denial from the relevant zoning authority, there is no "final action" triggering the TCA's remedies); *T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 305 n.4 (2015) (noting that where wireless provider brought TCA claims after filing for a permit from a local zoning authority, the final action was the written notice of denial). But in this case, TowerCo asserted *Brownfield* immunity, which purportedly allowed it to proceed with construction without seeking a permit or application. The threshold question is therefore one of first impression—what constitutes a "final action" under the TCA where state law allows a provider to circumvent the administrative decisions typically challenged under this section of the TCA. *See* 47 U.S.C. § 332(c)(7)(B)(v).

Where prior TCA case law does not shed light on this question, we may look to the definition of "final action" under the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq*. Indeed, the Supreme Court has used the APA's definitions as a guide to determine that, under the TCA, an action is "final" if it "mark[s] the consummation of the agency's decisionmaking process," and determines "rights or obligations" or triggers "legal consequences." *T-Mobile S.*, 574 U.S. at 305 n.4 (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). And other circuits have similarly concluded that the meaning of "final action" within the APA can be used to interpret the nearly identical phrasing of the TCA. *Cf. Global Tower Assets, LLC v. Town of Rome*, 810 F.3d 77, 82 (1st Cir. 2016) (noting that the terms "final" and "final action" have special meaning in the law, and that courts can "assume Congress knew the content of background law when legislating" (citation omitted)); *Impact Energy Res. v. Salazar*, 693 F.3d 1239, 1254 (10th Cir. 2012) (Seymour, J., concurring) ("When interpreting the meaning of the word 'final' in statutes using that term in relation to judicial review of agencies, courts commonly apply the APA's meaning of 'final.'").

Using the APA's definition of "final" to evaluate the Township's actions, we conclude that, unlike the denial of a permit application, the filing of a lawsuit seeking a determination of *Brownfield* immunity is not a final action. The state court's preliminary determination of whether TowerCo properly asserted *Brownfield* immunity cannot be considered the "consummation" of the Township's decision-making process—importantly, the decision to file the state court lawsuit is not determinative of whether the cell tower may ultimately be constructed and deployed.

### i. *Brownfield* Immunity

The *Brownfield* immunity doctrine is a creature of Ohio state law. *See Brownfield*, 407 N.E.2d at 1368. In *Brownfield*, the Ohio Supreme Court adopted a balancing test that evaluates the competing interests of government entities and local zoning rules to determine whether an actor can assert immunity from zoning regulations. *Id.* at 1367. To trigger this balancing test, the government entity must first make a "reasonable attempt to comply with the zoning restrictions of the affected political subdivision." *Id.* at 1368. In other words, *Brownfield* immunity from zoning arises only after the government actor's efforts to comply with municipal zoning have failed. *Id.* If the governmental entity cannot achieve compliance with local zoning regulations after reasonable efforts, the issue of *Brownfield* immunity is then resolved by weighing the public interests served by the proposed state activity against the competing public interests served by enforcing the local zoning restriction. *Id.*

Further interpreting the *Brownfield* doctrine, the Ohio Court of Appeals has since held that *Brownfield* immunity is self-executing. *See Taylor v. State Dep't of Rehab. & Corr.*, 540 N.E.2d 310, 316 (Ohio Ct. App. 1988). If a state actor[4] has made reasonable attempts to comply

---

[4]Although TowerCo is not itself a state actor, the Ohio state immunity doctrine "appl[ies] to the activities of private entities when the activities are done in agreement with the state and in furtherance of the identified state purpose." *GTE Wireless of the Midwest, Inc. v. Anderson Township*, 731 N.E.2d 201, 210 (Ohio Ct. App. 1999). The relevant inquiry for purposes of *Brownfield* immunity "is not the status of the actor but the nature of the activity to be regulated." *Ohio Logos, Inc. v. Catawaba Island Township*, No. 01AP-1206, 2002 WL 31122734, at *2 (Ohio Ct. App. Sept. 26, 2002). Nonetheless, where the School Board is essentially acting as a private landlord for TowerCo, we doubt that a valid and legitimate state purpose is implicated such that TowerCo may be allowed to unilaterally assert *Brownfield* immunity. Unlike the private company in *GTE Wireless*, the School Board—or any other state actor for that matter—has not directed TowerCo to erect a cell tower or issued TowerCo a permit to do so. 731 N.E.2d at 210 (upholding *Brownfield* immunity to exempt a private company from zoning regulations

with municipal zoning, then the actor "may proceed unless enjoined by a court of competent jurisdiction." *Id.* Therefore, once *Brownfield* immunity is asserted and reasonable efforts of compliance have been made, the actor "need not comply with existing procedures to obtain permits, variances or changes in existing zoning from local authorities as a prerequisite to the exercise of state governmental functions that the state authority is required by law to perform." *Id.* at 314; *cf. Laketran Bd. of Trs. v. Mentor*, 733 N.E.2d 313, 319 (Ohio Ct. App. 1999) (holding that, where *Brownfield* immunity has been properly asserted, any proceeding before a zoning board or board of zoning appeals would be "superfluous," as political subdivisions are not required to comply with local zoning procedures); Op. Ohio Att'y Gen. 2001-002 (noting that "attempted compliance" need not include obtaining permits or variances before the actor begins construction, and expressly disclaiming a prior opinion that required the state actor to apply for required permits).

### ii.   Intersection of *Brownfield* and Final Action Requirement

Based on the principles delineated above, the district court found that "where a telecommunications provider partners with a state entity and asserts *Brownfield* immunity, the only way for a local zoning authority to stop construction is to sue the provider for an injunction." Op. & Order, R. 39, Page ID #2152. Indeed, a clear and fundamental tenet of *Brownfield* immunity is that the party asserting immunity need not satisfy the normal permitting processes; instead, the party must only make reasonable attempts to comply with the relevant zoning regulations.[5]   And the only way to subsequently halt construction is by filing for an injunction. However, although an injunction may temporarily halt construction, the state court's determination regarding *Brownfield* immunity is merely a stepping stone on the path to a "final" action. In other words, the state court's ruling related to TowerCo's alleged *Brownfield*

---

where Ohio Department of Transportation ("ODOT") granted it a license to build a cell tower that would host state-owned communications equipment); *see also Ohio Logos*, 2002 WL 31122734, at *1 (noting that private company was performing a public function where the ODOT granted it a permit to install "governmental" road signs under Ohio Rev. Code § 4511.103). Instead, the cell tower location represents Verizon's business decision to expand its own private network, which seems markedly different than the state purposes that *Brownfield* intended to protect.

[5]Despite TowerCo's contentions on appeal, we note that the record does not clearly reflect that it made reasonable attempts to comply with the Township's zoning regulations delineated in Berlin Township Zoning Resolution § 6.04(C)(4).

immunity is not independently dispositive of the Township's eventual ruling regarding the proposed cell tower. *Cf. Laketran*, 733 N.E.2d at 318 (emphasizing that "the *Brownfield* standard is significantly different from the standards a zoning board would apply in determining whether to grant a variance or a conditional use permit").

Importantly, even assuming *Brownfield* immunity does not apply, TowerCo would merely be required to seek a conditional use permit from the Township's BZA. And the BZA may ultimately grant TowerCo the conditional use permit and/or the authority to stray from normal zoning requirements. Indeed, the Township's BZA operates completely separately from the Township's trustees. *Cf.* Ohio Rev. Code § 519.13. Regardless of the outcome on the interlocutory *Brownfield* question, TowerCo may nonetheless eventually receive the green light on its cell tower project. *Cf. Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 498 (6th Cir. 2014) ("An agency action is not final if it 'does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action.'" (quoting *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939))); *Reliable Auto. Sprinkler Co. v. Cons. Prod. Safety Comm'n*, 324 F.3d 726, 733–34 (D.C. Cir. 2003) (explaining that an agency action is not final where the challenging party still enjoys an opportunity to convince the agency to change its mind, and rejecting appellant's argument that further agency proceedings would be futile).

To summarize, the Township's litigation decision to challenge TowerCo's assertion of *Brownfield* immunity functions most similarly to a "tentative" or "interlocutory" decision, rather than the finalized "consummation of the decision-making process." *Bennett*, 520 U.S. at 177–78. After all, the state court would merely determine if *Brownfield* immunity applies in ruling on the injunction or declaratory action—an inquiry that is better left to the Ohio state courts, as the unique form of immunity is a state-created doctrine. If *Brownfield* immunity does apply, the actor would proceed with construction without interference from the local government. If the state court determined that *Brownfield* immunity did not apply, the actor would then undergo the normal permitting procedures. For example, in this case, TowerCo would proceed by seeking the required conditional use permit from the BZA, which may be granted or denied. An adverse permitting decision—a clear final action—could then result in a run-of-the-mill TCA claim.

Given the opportunity for further review by the BZA, we cannot agree that the Township's determination to file a lawsuit regarding TowerCo's purported immunity status constituted a final action.

### b.  30-Day Filing Period and Tolling:  Timeliness

Even assuming that the filing of the state court lawsuit constitutes a "final action" under the TCA within the limited context of this case, TowerCo indisputably did not pursue its remedies in federal court under the TCA within 30 days of that final action.  The Township filed its state court complaint on June 21, 2022.  TowerCo had 30 days, until July 21, 2022, to pursue its TCA claims.  *See* 47 U.S.C. § 332(c)(7)(B)(v).  But TowerCo's federal suit asserting various TCA claims was filed on August 31, 2022, well outside of this statutory deadline.  Based on TowerCo's untimeliness, the Township argues that TowerCo cannot prevail on its TCA claims, and the decision granting the preliminary injunction should be reversed.

The district court determined that, although TowerCo's TCA claims were not brought within the prescribed 30-day window, TowerCo's claims were subject to tolling because the parties jointly entered a stay in the state court litigation to work towards a mutually agreeable resolution.  The parties' joint stay was entered on July 15, 2022, when 24 days had lapsed following the alleged final action.  TowerCo then voluntarily dismissed its state court TCA claims on August 23, 2022.  After negotiations proved unsuccessful on August 30, 2022, TowerCo filed its federal lawsuit the next day.  Accounting for and subtracting the time period of the parties' joint stay, the district court held that TowerCo's case was filed within 30 days of the "final action," the Township's filing of the state court case.

Contrary to the district court's finding, there is no evidence that the parties intended to toll any statute of limitations when they entered into the joint stay.  Instead, the parties agreed to enter into a standstill period, adhere to the state court's TRO during the standstill, and continue to make filings related to the motion to remand.  Their agreement was silent on tolling.  TowerCo had the power to draft and suggest any language that it wanted to include in the joint stay.  This case is not one in which the Court is reviewing the actions of a *pro se* plaintiff with leniency, or one in which a party has been tricked into a harmful course of action—these are

sophisticated parties that specialize in this type of litigation. The parties specifically chose the language of the joint stay and were well aware of the 30-day deadline prescribed by the TCA. *Cf. Johnson v. Long John Silver's Rests., Inc.*, 320 F. Supp. 2d 656, 660 (M.D. Tenn. 2004) (parties began settlement negotiations and entered into a joint stay and tolling agreement, expressly providing that the statute of limitations would be tolled with respect to all class members for a certain amount of time); *New Cingular Wireless PCS, LLC v. Town of Stoddard*, 853 F. Supp. 2d 198, 199–200 (D.N.H. 2012) (wireless provider explicitly agreed to extend the zoning board's 150-day deadline to act under the TCA by three months).

Perhaps acknowledging that the joint stay lacked language related to tolling, the district court also cited and relied upon the following reasoning from the 2009 Federal Communications Commission ("FCC") Ruling that clarified the application of certain time limits contained in § 332(c)(7)(B)(v):

> [A] rigid application of this cutoff to cases where the parties are working cooperatively toward a consensual resolution would be contrary to both the public interest and Congressional intent. Accordingly, we clarify that a "reasonable period of time" may be extended beyond 90 or 150 days by mutual consent of the personal wireless service provider and the State or local government, and that in such instances, the commencement of the 30-day period for filing suit will be tolled.

2009 FCC Ruling ¶ 49. In other words, the district court invoked certain equitable principles recognized by the FCC to bolster its decision to read an implicit intention to toll the 30-day deadline into the parties' joint stay agreement. On appeal, TowerCo argues that the district court properly did so, as the TCA's time limits are "entitled to a presumption of equitable tolling." Pl.'s Br., ECF No. 25, 34. Where the meaning of the joint stay agreement is clearly disputed, we review the district court's equitable tolling decision using an abuse of discretion standard. *See Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 469 (6th Cir. 2003) ("We review a district court's decision to grant or deny equitable tolling *de novo* when the facts are undisputed or the district court rules, as a matter of law, that equitable tolling is not available; in all other circumstances we review for an abuse of discretion.").

The parties both agree that the 2009 FCC Ruling cited by the district court is not controlling, as the FCC was addressing the meaning of "reasonable period of time" in the case of

a local government's *failure* to act. Because a local zoning board could not evade TCA liability by never ruling on or delaying a certain construction permit, the FCC Ruling provided specific limits (either 90 or 150 days) to the previously undefined "reasonable period of time" that governs the local government's time to act. 2009 FCC Ruling ¶ 32. One of the principal reasons for the FCC's clarification was that, in the absence of specific timeframes governing a failure to act, an aggrieved party could miss the 30-day statute of limitations through no fault of its own. *Id.* ¶¶ 27, 32; *New Cingular*, 853 F. Supp. 2d at 202 (explaining that the FCC clarified exactly when a local government's failure to take an action became unreasonable because wireless providers were often "left guessing as to when they should seek redress"); *cf. GTE Mobilnet of Cal. Ltd. v. City of Berkeley*, No. 20-cv-05460-DMR, 2023 WL 2648197, at *12–13 (N.D. Cal. Mar. 27, 2023) (parties entered into a tolling agreement in which they executed four written amendments that gradually extended the local government's time to act on Verizon's application, which in turn extended Verizon's time to file suit). Such temporal ambiguity is not present in this case. Therefore, the FCC's clarification does not address the instant situation, where the local government entity *has acted* by filing suit in state court, clearly and unambiguously triggering the 30-day limitation period upon filing.

TowerCo attempts to capitalize on the reasoning that governs failure to act cases while simultaneously arguing that the filing of the state court lawsuit was an affirmative "final action." But, assuming TowerCo is correct that the state court complaint was a final action in the unique circumstances of *Brownfield* immunity, there is no ambiguity that justified tolling—the 30-day deadline in § 332(c)(7)(B)(v) was as clear as its 30-day deadline to remove to federal court, which TowerCo closely monitored and met. And TowerCo timely filed its answer and counterclaim in state court, which included TCA claims brought within the 30-day deadline. Even though TowerCo's filing mistakes eventually caused it to voluntarily dismiss its counterclaims and re-file the claims in federal court outside of the prescribed 30-day window, the original state court filing was timely.

Based on TowerCo's actions, the 2009 FCC Ruling and equitable tolling do not apply to these circumstances. The sole reason that TowerCo attempts to hinge its claims on the doctrine of equitable tolling on appeal is because it made an easily avoidable mistake—assuming that the

case was removable based on a federal counterclaim, which has never been sufficient to remove to federal court. *See, e.g.*, *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831–32 (2002) (removal jurisdiction cannot be premised on a federal counterclaim); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (federal jurisdiction generally exists "only when a federal question is presented on the face of the *plaintiff's* properly pleaded complaint" (emphasis added)). And TowerCo even knew that the Township intended to file a motion to remand, as evidenced by the joint stay communications between the parties and the text of the joint stay itself.

Perhaps realizing its mistake after reviewing the Township's motion to remand, TowerCo then voluntarily dismissed its counterclaim and opted to wait several additional days to file in federal court. But this voluntary dismissal does not restart or preserve TowerCo's statute of limitations time. As the Township points out, "[i]t is generally accepted that a dismissal without prejudice leaves the situation the same as if the suit had never been brought, and that in the absence of a statute to the contrary a party cannot deduct from the period of the statute of limitations the time during which the action so dismissed was pending." *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 27 (6th Cir. 1987) (per curiam); *Harris v. City of Canton*, 725 F.2d 371, 376–77 (6th Cir. 1984) ("[D]ismissals without prejudice operate to leave the parties as if no action had ever been commenced. . . . If the period of limitations has run by the point of such a dismissal, any new action is generally untimely."). Even though TowerCo's state court counterclaim asserting violations of the TCA was filed within the 30-day window, its subsequent federal case was untimely. *Cf. Nitch v. E. Gateway Cmty. Coll.*, 857 F. App'x 222, 223 (6th Cir. 2021) ("[A] lawyer's mistake is not generally a valid basis for equitable tolling." (internal quotation marks omitted) (citing *Jurado v. Burt*, 337 F.3d 638, 644 (6th Cir. 2003))); *Giles v. Beckstrom*, 826 F.3d 321, 325 (6th Cir. 2016) ("Generally, an attorney's misunderstanding of a filing deadline is not grounds for equitable tolling.").

Although we certainly encourage parties to work towards a resolution, equitable tolling could apply to any case under this rationale alone. *Cf. Omnipoint Holdings, Inc. v. City of Southfield*, 203 F. Supp. 2d 804, 814 (E.D. Mich. 2002) (holding equitable tolling did not apply to TCA plaintiff's 30-day time limit based on pre-suit negotiations); *Raziano v. United States*,

999 F.2d 1539, 1541 (11th Cir. 1999) ("[P]re-suit negotiations to settle do not ordinarily estop a defendant from later asserting a limitations defense."); *DannaMarie Provost v. Hall*, 757 F. App'x 871, 877 (11th Cir. 2018) (holding that settlement negotiations did not toll limitations period where there was no "indication that plaintiffs ever asked Royal Caribbean to consent to an extension of the contractual limitation period while the parties engaged in settlement negotiations"); *Randy's Towing, LLC v. Charter Township of Oscoda*, No. 16-10806, 2016 WL 4429620, at *2 (E.D. Mich. Aug. 22, 2016) ("Settlement negotiations are by no means an 'extraordinary circumstance' that would prevent a plaintiff from diligently and timely pursuing his or her rights. Such a broad exception would swallow the general limitations rules, as the majority of parties involved in a legal conflict are involved in some form of negotiations prior to filing suit."). Of course, the parties here went a step further by filing a joint motion to stay proceedings, but the motion was completely silent on the issue of tolling. We cannot divine the parties' intent and read language into the joint stay that simply does not exist.

Despite TowerCo's arguments to the contrary, two actions could have prevented TowerCo's untimeliness: (1) preserving its rights by originally filing the TCA claims in federal court, rather than as state court counterclaims hoping and counting on later removal, or (2) carefully drafting a standstill and tolling agreement. In other words, nothing prevented TowerCo from discussing settlement with the Township after preserving its rights and filing its TCA claims in the proper forum, rather than before. The district court erroneously read language into the joint stay agreement that did not exist, and further abused its discretion in applying equitable tolling, as any mistaken assumptions about removability are not a valid basis for equitable tolling. *Cf. Jurado*, 337 F.3d at 644. Because the 30-day time limit applies to all three of TowerCo's TCA claims, TowerCo has failed to show a likelihood of success on the merits.

### 2. Additional Preliminary Injunction Factors

Barred by the final action requirement and its untimeliness, TowerCo's TCA claims must be dismissed. In addition, TowerCo cannot show that the remaining three factors of the preliminary injunction analysis compensate for its failure to show a likelihood of success on the merits as to any of its three TCA claims. As related to the irreparable injury prong, the district court found that TowerCo was likely to suffer harm in the absence of a preliminary injunction

due to the "loss of customer goodwill."  Op. & Order, R. 39, Page ID #2165.  Recognizing that Verizon—which is most directly affected by the inability to remedy a gap in coverage—is not a party to this case, the district court specified that if Verizon loses customer goodwill, "then TowerCo will in turn lose goodwill from its longtime customer, Verizon."  *Id.* at Page ID #2166.

Although there is an attenuated possibility that TowerCo could lose Verizon's trust, such harm depends on Verizon first losing customer goodwill, triggering a supposed skepticism in TowerCo's ability to be a reliable partner.  This purported harm is far from "certain and great," as required for this second prong, but rather is more accurately described as "speculative or theoretical."  *Ohio ex rel. Celebrezze v. Nuclear Regul. Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987).  And this speculation is not borne out in the record, as TowerCo's general counsel testified during the preliminary injunction hearing that TowerCo has continued to work on new projects for and enter new contracts with both Verizon and other cell providers.  Beyond the speculative nature of TowerCo's asserted harm, TowerCo's own ill-conceived actions seemingly created the "irreparable harm" of which it complains.  Despite clear objection from the Township, TowerCo plowed ahead with the construction of the cell tower that it knew the Township would likely challenge.  Because TowerCo had a multitude of other options to avoid initiating the circumstances leading to the very harm that it claims, it can hardly now assert that this purported harm is "imminent and irreparable."

Instead of the potential loss of Verizon as a customer—which the evidence in the record directly contradicts—the main harm that TowerCo faces in this case is economic loss, as TowerCo must pay the rent on the lease regardless of whether the cell tower is deployed.  The delay of the cell tower's deployment undoubtedly costs TowerCo a significant amount of money.  However, "mere economic loss does not constitute irreparable injury," because it is compensable by damages.  *Ohio ex rel. Celebrezze*, 812 F.2d at 291.  Therefore, the district court erred by imposing the preliminary injunction based in part on an incorrect determination of irreparable harm.  And where TowerCo has not shown a likelihood of success on the merits, its further failure to show any non-economic, irreparable injury warrants reversal.

The remaining two factors—balancing of the equities and public interest—arguably cut both ways.  Even assuming both factors favor TowerCo, the likelihood of success on the merits

is paramount to the preliminary injunction analysis.  *Cf. Higuchi*, 103 F.4th at 409; *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010) ("[A] preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed." (alteration in original) (citation omitted)).  And in this case, there is no "final action" as defined by the TCA for the district court to review, mandating reversal.  Because the preliminary injunction factors weigh against TowerCo, the "extraordinary remedy" of a preliminary injunction is not warranted.

### III.  CONCLUSION

For the reasons set forth above, we **REVERSE** the district court's order granting a preliminary injunction in favor of TowerCo, and **REMAND** for further proceedings consistent with this opinion.